**INTERNAL REVENUE SERVICE,
Plaintiff-Appellant,**

v.

**Laurence H. LEVY, Trustee For
Landbank Equity Corporation,
Defendant-Appellee.**

**Civ. A. No. 91-161-N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

July 29, 1991.

Raymond A. Jackson, U.S. Attys. Office, Norfolk, Va., Stuart D. Gibson, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff-appellant.

David H. Adams, Clark and Stant, Virginia Beach, Va., for defendant-appellee.

## ORDER

CLARKE, District Judge.

Landbank Equity Corporation and Richmond Equity Corporation filed Chapter 11 bankruptcy petitions in September 1985. Shortly thereafter, the cases were converted to Chapter 7 liquidation proceedings, and Laurence H. Levy was appointed Trustee. On May 23, 1990, the IRS filed a Request for Payment of Internal Revenue Taxes and a Proof of Claim for Internal Revenue Taxes. The Trustee objected to the Request and Proof of Claim filed by the IRS. After the IRS and the Trustee filed a stipulation of facts, the Bankruptcy Court conducted a hearing and sustained the objections of the Trustee to all of the claims of the IRS. The IRS raises three issues in its appeal of the Bankruptcy Court's Order. Having heard oral argument, the Court will address the issues below.

### Facts

Formed in 1981 by William and Marika Runnells, its sole shareholders, Landbank was in the business of making second-mortgage loans to its customers and selling the mortgages on the secondary market to institutions such as the Federal National Mortgage Association (Fannie Mae), banks, and savings and loans. William and Marika Runnells are now serving federal sentences of imprisonment exceeding thirty years each for the fraudulent methods with which they conducted Landbank's business. Stated succinctly, they misrepresented the quality of the loans they were selling and the financial health of Landbank to the purchasing institutions in order to induce the institutions to provide Landbank with ever greater lines of credit, thereby allowing the Runnells to further expand their business.

The Runnells instructed their employees to doctor loan files so that the borrowers' equity and ability to pay would make the loans attractive to purchasers. In order to further encourage the institutions to buy its loans, Landbank guaranteed that it would buy back any loans that went bad. After it sold the loans, Landbank purported to service them on behalf of the purchasers. As a result of the combination of these features, the institutions never found out that many of the borrowers were making late payments, or making no payments at all. Because this pyramid scheme depended upon the institutions' continuing to believe that the loans were high quality, Landbank did not disclose accurate delinquency or default information to the purchasers. Nor did Landbank report any losses resulting from these delinquencies or defaults on its tax returns. Moreover, Landbank, whose sole accountant has also been imprisoned for his participation in Landbank's business, did not maintain accurate delinquency or default information for its own benefit, nor did it keep its books in an orderly or honest fashion. Landbank was thus able to remain in business for four years, and in fact expand its business during this period, despite suffering massive bad debt losses from its inception. The bubble burst in September 1985, however, as the existence of the losses began to emerge.

The IRS allowed the Trustee to charge off against a bad debt reserve more than $9,000,000 in bad debt losses on Landbank's 1986 return. The IRS therefore concedes that Landbank incurred these bad

debt losses. The main issue on appeal has thus become whether the Trustee may apply deductions for the bad debt losses admittedly suffered by Landbank to income from the tax years during which Landbank was in operation, or whether he must treat the losses as if they were all incurred in the tax year after Landbank had gone bankrupt, and charge them off against a bad debt reserve account, as the IRS contends.

The above-described combination of neglect and fraud operated to make the Trustee's task in this case even more difficult than it is in the typical corporate liquidation proceeding. When the Trustee first took over, he received very limited and evasive cooperation from Landbank's principals. As the Trustee's task progressed, the criminal actions instituted against many of the Landbank principals made their assistance impossible. For instance, William and Marika Runnells fled from prosecution just prior to the first criminal trial in this case, and the vice-president of the corporation committed suicide on the eve of trial.

*Bad Debt Loss Deductions*

The first issue raised by the IRS concerns the Bankruptcy Court's decision regarding the Trustee's treatment of bad debt loss deductions. This issue concerns Landbank's tax liability for fiscal years 1982 through 1985.[1] Under the tax laws governing those years, a corporation could account for bad debt losses in one of two ways. It could take deductions for actual bad debts that became worthless during the tax year in question, or it could take deductions for reasonable additions to a bad debt reserve account. *See* I.R.C. § 166(c) (repealed 1986). After Landbank went into bankruptcy, the IRS conducted an audit of the corporation, and computed Landbank's tax liabilities using the reserve method, allowing a deduction each year for an amount it determined Landbank should

have contributed to a bad debt reserve. Based upon its audit, the IRS then submitted a Form 870, entitled "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," to Laurence Levy as Trustee. In October 1986, on the advice of accountants whom he had hired, the Trustee signed the Form. Form 870 gives the taxpayer's consent to the IRS's assessment of liabilities as shown on the Form. Signing the Form constitutes filing tax returns for the years to which the Form applies. Rev.Rul. 74-203, 1974-1 C.B. 330; *see also* I.R.C. § 6020(a); *United States v. Olgeirson,* 284 F.Supp. 655, 659 (D.N.D. 1968).

In computing Landbank's taxes for tax years 1982 through 1985, the IRS used the bad debt reserve method, allowing deductions for additions to a bad debt reserve for each of those years. As of the tax year ending in 1985, the bad debt reserve totalled $6,425,000. *See* U.S. Corporation Income Tax Return, Schedule F(g) (attached as exh. B to Stipulation of Facts (filed in the Bankruptcy Court Jan. 31, 1991)). When the Trustee filed the corporation's 1986 return, he was required to continue to use the bad debt reserve method. *See* Treas. Reg. § 1.166–1(b)(1). In the 1986 return, the Trustee added $2,824,660 to the bad debt reserve, so that the reserve totalled $9,250,660, and then charged off against the reserve losses of $9,105,087. *See* U.S. Corporation Income Tax Return, *supra.* This method of accounting, instituted by the IRS through the Form 870 it had the Trustee sign, resulted in various tax liabilities for Landbank for the 1982 through 1985 tax years. Although the liability is partially for income taxes for the four years, the vast portion of the liability is for interest and penalties on those taxes.

The Trustee objects to the claim of the IRS for these taxes, interest, and penalties, because the Trustee contends that the taxes upon which the entire liability is based were never actually due the IRS. The debts did not all become worthless in 1986,

---

1. Landbank's fiscal years ran from September 1 to August 31. The Court refers to the return filed for a particular fiscal year according to the ending date of that year. Thus, for example, the

Court refers to the return filed for the fiscal year beginning September 1, 1985 and ending August 31, 1986 as "the 1986 return."

he argues; they became worthless during the four prior years, but were never accounted for properly because of the fraudulent conduct of Landbank's officers and employees. He asks to be allowed to allocate the finally discovered bad debt losses of $9,105,087 over the tax years 1982 through 1985. Allocating these losses as actual losses over the four years results in negative adjusted income for the four years. *See* Loss Allocation Calculation (attached as exh. 3 to Appellee's Opening Brief (filed June 7, 1991)).

The Bankruptcy Court, citing the equities of the case, agreed with the Trustee, and disallowed the IRS's claim. The Bankruptcy Court based its holding upon the view that because the Trustee signed the IRS's Form 870 in October 1986—before he had the opportunity to review fully the entangled financial situation the corporation was in—he should be given the opportunity to change his position with respect to the appropriate accounting methods and deductions, given his later-acquired knowledge. *See* Order, at 2 (Bankr.E.D. Va. March 6, 1991); *see also* Transcript of Proceedings, at 38 (filed Apr. 25, 1991) (in which the Bankruptcy Judge stated, "The nature of this case prohibited a determination, prohibits now clearly ... a determination of the exact time of losses, and the Court is of the opinion that an allocation would be proper").

The IRS contends that the Bankruptcy Court erred as a matter of law in allowing the losses claimed in the 1986 return to be allocated over the preceding four years. It first argues that in signing the Form 870, and in filing Landbank's 1986 return, the Trustee used the reserve method; because the regulations prohibit the taxpayer from changing the method by which it accounts for bad debt losses without the consent of the Commissioner, the Trustee may not now change to the actual method. The IRS therefore argues that the Bankruptcy Court erred in allowing the Trustee in effect to change from the reserve method to the actual method.

As the Trustee argues and as the IRS admits, the Trustee is still entitled to amend the corporation's tax returns for the tax years 1982–1986. *See* Appellee's Opening Brief, at 17 (filed June 7, 1991); Reply Brief in Support of Appeal of Appellant Internal Revenue Service, at 9 (filed June 18, 1991). It therefore follows that the Bankruptcy Court could allow the Trustee to amend the returns to use the actual method of bad debt loss accounting, rather than the reserve method.[2] The Court therefore finds that the Bankruptcy Court did not err by allowing the Trustee to change accounting methods.

The underlying objection of the IRS still remains, however. The IRS argues that if the Court permits the Trustee to amend his 1982–1986 returns and use the actual method, the Trustee must still show that Landbank is entitled to the deductions it takes in those returns. Citing *Wisely v. United States*, 893 F.2d 660, 666 (4th Cir.1990), the IRS contends that the burden of proving deductions is on the taxpayer; if the Trustee wants to take actual bad debt loss deductions, he must show (1) that a bona fide debt obligation existed, and (2) that the particular debt for which a deduction is sought actually became worthless during the taxable year. Treas.Reg. §§ 1.166–1(c), 1.166–2. According to the IRS, the Bankruptcy Court erred by allowing the Trustee to take actual bad debt deductions for the four years in question, without requiring the Trustee to prove that the corporation was entitled to those deductions.

The issue before the Court, therefore, is whether the Bankruptcy Court abused its discretion in allowing the Trustee to allocate the bad debt reserve over the tax years 1982–1985 as if the Trustee had proven actual bad debt losses. For the reasons outlined below, the Court finds that the Bankruptcy Court acted correctly.

**2.** The Trustee argues that because the "returns" upon which the IRS relies so heavily are in actuality the Form 870 that the Trustee signed *after* the filing of the bankruptcy petition, the tax years in question are still open and he is therefore entitled to amend the "returns." Appellee's Opening Brief, at 17 (filed June 7, 1991). The IRS has not contested this analysis.

■ Bankruptcy courts are essentially courts of equity. *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). The Supreme Court has stated that "bankruptcy courts have exercised [their] equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done." *Id.* at 304–05, 60 S.Ct. at 244. After reviewing the record in this case, the Court is convinced that to uphold the claims of the IRS would be to exalt form and technical considerations over substance and substantial justice. The IRS admits, as does the Trustee, that it would be impossible for the Trustee to prove the times at which specific debts became worthless. Brief on Appeal of Internal Revenue Service, at 11 (filed June 7, 1991); Appellee's Opening Brief, at 15 (filed June 7, 1991); Reply Brief in Support of Appeal, at 10 (filed June 18, 1991). At the same time, however, the IRS has accepted the Trustee's 1986 tax return, in which the Trustee charged off against its bad debt reserve more than $9,000,000 in bad debt losses. The IRS has not claimed that Landbank did not incur these bad debt losses. It merely claims that because the Trustee cannot prove exactly when Landbank incurred the bad debt losses, he cannot take deductions for them in any particular year, and therefore must accept the IRS's version of each year's proper deductions for bad debts.

■ The Court disagrees with the IRS's position. The IRS relies on the traditional rule that the burden is always on the taxpayer to prove that it is entitled to a deduction. The Court agrees that this is the normal allocation of the burden of proof in a tax case. *See, e.g., Wisely v. United States*, 893 F.2d 660 (4th Cir.1990). In a bankruptcy case, however, the burden of proof with regard to a claim is ultimately upon the claimant. Under Bankruptcy Rule 3001(f), a properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. Bankr. R. 3001(f). The debtor, however, need only present evidence supporting its objection in order to shift the burden of proving the claim back to the claimant. *E.g., In re Leedy Mortgage Co.*, 111 B.R. 488, 491 (Bankr.E.D.Pa.1990). The fact that the claimant is a tax authority does not alter the rule that the claimant bears the ultimate burden of establishing its claim. *See In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir.1988); *In re Brady*, 110 B.R. 16, 18 (Bankr.D.Nev.1990) (Government is treated like any other claimant because estate, not just taxpayer, is party in interest); *In re Gran*, 108 B.R. 668, 673–74 (Bankr. E.D.Ark.1989).

■ Both parties agree that Landbank incurred bad debt losses. They also agree that the timing of the losses is not susceptible to proof because of fraud and poor record-keeping at the company. The task before the parties, therefore, is in essence to recreate the tax history of this corporation, representing their respective versions of what the company should have done had it been managed honestly. The IRS version of this history uses the fiction of additions to a bad debt reserve to account for bad debts. This version results in a corporate income tax liability for the years 1982–1985 of approximately $50,000. Proof of Claim for Internal Revenue Taxes (attached as exh. H to Stipulation of Facts (filed in the Bankruptcy Court on Jan. 31, 1991)). The interest and penalties claimed by the IRS on the $50,000 tax liability total $544,895.90, more than ten times the purported original liability. *Id.* The Trustee's version of the history consists of taking the final loss that he determined, after the fact, to have resulted from bad debts for the tax years in question, and allocating a portion of the total loss to each year in proportion to that year's share of the total net income for the four years. *See* Loss Allocation Calculation (attached as exh. 3 to Appellee's Opening Brief (filed June 7, 1991)). This version results in no corporate income tax liability for the tax years 1982–1985.

Under these circumstances, with both parties admitting the existence of bad debt losses and their inability to prove exactly when the losses took place, the issue narrows itself to who bears the burden of proof regarding the time at which the debts became worthless. The burden would normally be on the taxpayer, but the law cited above clearly places the burden upon the IRS when it is a claimant in a bankruptcy case. The rationale is clear; in a liquidation proceeding, the debtor has ceased to exist, and the Trustee's task is to preserve the estate for the benefit of all the creditors. A creditor filing a claim files the claim against the estate, and therefore against all the other creditors. Bankruptcy Rule 3001(f) and the cases construing the Rule set out the burden of proof that the law has determined is most appropriate for resolving a creditor's claim against his fellow creditors. The Rule makes the equities between the creditor and the debtor of secondary importance to the equities between the creditor and the estate. The IRS argues in its brief that the theme of its appeal is that "equity must follow the law." Brief on Appeal of Appellant Internal Revenue Service, at 7–8 (filed June 7, 1991). In the context of a claim against an estate in bankruptcy, however, Rule 3001(f) ensures that the law follows equity by shifting the ultimate burden of proof to the claimant, even if the claimant is the IRS, and even if the IRS would not be subject to the burden of proving its claim in a non-bankruptcy proceeding.

Given the burden of proof faced by the IRS, the Bankruptcy Court did not err as a matter of law in accepting the Trustee's version of the tax history of Landbank, and allowing the Trustee to allocate the bad debt losses over the 1982–1985 period. As a claimant bearing the burden of proving its claim, the IRS could only point to the "returns"—the Form 870—that it prepared for the debtor, after conducting an audit based upon fictional additions to a fictional bad debt reserve, which audit in turn was based upon records that the IRS admits made it impossible to prove exactly when particular debts became worthless. Landbank never added any amounts to a bad debt reserve; and although such a reserve is always something of an accounting fiction, in this case it is a fiction devised by the IRS after the fact, and in circumstances in which the IRS stood to gain roughly ten dollars in interest and penalties for every dollar of tax liability its audit resulted in. Moreover, this audit resulted in only a $50,000 tax liability for four years, a minuscule amount compared to the corporation's net income for the period—some $2.5 million before net operating losses. *See* Income Tax Examination Changes (attached as part of exh. A to Stipulation of Facts (filed in the Bankruptcy Court Jan. 31, 1991)). The margin of error on the IRS's calculations, which were based upon extremely poor records, would only have to be two percent in order to completely wipe out the significance of the $50,000 amount. Given these circumstances, the IRS's amounts for additions to a bad debt reserve carry no more weight than the Trustee's amounts for actual bad debt loss allocations. In short, the burden was on the IRS to show that had Landbank's tax returns been based upon accurate accounting for the years in question, Landbank would have been liable for corporate income taxes. The Bankruptcy Court committed no error in holding, on the basis of the circumstances surrounding the claim and the facts the parties had stipulated, that the IRS had not carried this burden.

### Restricted Interest

The next issue raised by the IRS's appeal is "[w]hether the Bankruptcy Court erred as a matter of law in holding that the Internal Revenue Service has no claim for interest pursuant to 26 U.S.C. § 6601(d) ("restricted interest") on pre-petition income tax liabilities which were either reduced or eliminated as a result of carrybacks of net operating losses incurred in later years." Designation of Record and Statement of Issues for Appeal, at 2 (filed Mar. 25, 1991). The basis of the IRS's objection to the Bankruptcy Court's ruling on this issue is its assertion of I.R.C. § 6601(d). This section states that if a taxpayer is liable for a tax in a particular year and fails to pay the tax, it remains liable for interest on the unpaid tax even if the tax itself is wiped out by the carryback

of net operating losses from a later year. *See Manning v. Seely Tube & Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950). The Trustee argues that in Landbank's case the IRS did not complete its audit and assess the taxes upon which the restricted interest claim is based until *after* the corporation had filed its petition. He argues that as of the date Landbank filed its petition, Landbank did not owe the underlying tax debt to the IRS, and that therefore, under Bankruptcy Code § 502(b)(2), the restricted interest is unmatured interest and should be disallowed.

The Court declines to rule on this issue because it was rendered moot by the Court's affirmance of the Bankruptcy Court's determination that the Trustee is entitled to allocate bad debt losses over each of the tax years 1982–1985.[3] This allocation wipes out the income tax liability upon which the IRS bases its restricted interest claim. Rather than indulging in the IRS's fiction that the losses suffered by Landbank all occurred in 1986, and then carrying the losses back to the three prior years, it places the loss deductions closer to the years in which the losses actually took place. This result is more equitable. Had Landbank kept honest books, it would have deducted bad debt losses in the year the corporation incurred them, and therefore never have been liable for restricted interest. In doing his best to approximate a more honest tax history for Landbank, the Trustee prevents the IRS from receiving an undeserved windfall from the fraud and negligence of the Landbank principals, and preserves a greater portion of the estate for the benefit of Landbank's other creditors.

*Investment Tax Credit Recapture*

The above analysis applies equally well to the final issue the IRS appeals. As stated by the IRS, the issue is "[w]hether the Bankruptcy Court erred as a matter of law in holding that the claim of the Internal Revenue Service for income taxes incurred post-petition resulting from the recapture of previously-claimed investment tax credits, pursuant to 26 U.S.C. § 47, is a pre-petition claim entitled to priority under Bankruptcy Code § 507(a)(7), rather than an administrative claim entitled to priority under Bankruptcy Code § 507(a)(1)." Designation of Record and Statement of Issues for Appeal, at 2 (filed Mar. 25, 1991). Under the law applying to the years in question, a taxpayer could get tax credits for investing in certain kinds of property. I.R.C. §§ 38, 46. If it disposed of the property within a certain period of time, or used the property in a disqualifying way, however, it was again liable for a portion of the taxes against which it applied the credit— the credit had to be "recaptured." I.R.C. § 47 (prior to 1990 amendments). Because the Trustee disposed of some assets in 1986 that would have qualified for an investment tax credit in prior years had Landbank's accountant claimed them, the IRS claims that the estate is liable for the recapture of these credits. Here again the IRS relies on the audit it conducted in the first year of the bankruptcy, and as a result of which it submitted the Form 870 to the Trustee, who signed it. The IRS argues that because the Trustee signed the Form 870, and thereby filed tax returns tracking the IRS audit for the years 1982– 1985, the estate should be held liable for the recapture just as if the corporation had actually taken the credits in the prior years.

This issue, too, is rendered moot by the Court's affirmance of the Bankruptcy Court's ruling that the Trustee was entitled to allocate the corporation's bad debt losses over the years 1982–1985. With such an allocation, Landbank incurred no tax liabilities against which it would or could have applied tax credits. Allowing the Trustee to approximate the tax history that best represents the substance of Landbank's business, it becomes clear that the corporation was losing money from the outset, and therefore never owed any taxes to the IRS.

*Conclusion*

Having dealt with the myriad hearings, trials and proceedings related to Landbank

---

3. The Court notes that counsel for the IRS conceded at oral argument that allowing the Trustee's allocation of bad debt losses to the tax years 1982–1985 would render moot the restricted interest issue as well as the issue regarding recapture of investment tax credits, discussed below.

for more than five years, the Bankruptcy Court and this Court have developed substantial familiarity with the circumstances surrounding the case, and with the difficulties faced by any individual or group who would bring order to Landbank's chaos. The IRS asks the Court to apply the law blindly, to give full effect to legal fictions and presumptions developed for entirely different circumstances. In a more typical corporate tax case, the Court concerns itself with the rights of the IRS and the taxpayer. Here however, the interests of all of Landbank's other creditors exist alongside the IRS's interests, and the IRS asks the Court to ignore them. The IRS virtually concedes that Landbank never had any positive income, but nevertheless seeks to hold the Trustee liable for taxes, interest, and penalties resulting from the fraud of Landbank's principals on the one hand, and the accounting technicalities incorporated into the IRS's audit on the other.

As discussed above, and as a matter of law, the burden was on the IRS to prove its claim. Although a liquidation proceeding is debtor against creditor in form, the substance of the proceeding pits creditor against creditor. Bankruptcy Rule 3001(f) and the cases interpreting the Rule reflect the substance of the proceeding by requiring every creditor to meet the same burden of proof in order to establish its claim. Despite being a tax authority, the IRS must also meet this burden; the priority of a tax claim takes effect only after the tax authority has proven its claim. Because the Court finds that the Bankruptcy Judge acted within his discretion in finding that the IRS had not sufficiently proven its claim, the Court AFFIRMS the Bankruptcy Court's Order.

The Clerk is DIRECTED to forward a copy of this Order to counsel for the appellant and to counsel for the appellee.

IT IS SO ORDERED.