**In re Joyce P. WILHELM, Debtor.**

**Bankruptcy No. 93–20037–MDM.**

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 2, 1994.

David J. Winkel, Neenah, WI, for debtor.

Christopher Grigorian, Washington, DC, for claimant.

## MEMORANDUM DECISION

M. DEE McGARITY, Bankruptcy Judge.

### I. *Introduction*

This matter comes before the court on debtor's objection to the proof of claim filed by the United States ("IRS") in the chapter 13 bankruptcy of Joyce Wilhelm ("debtor"). By this objection, the court has been asked to determine the amount of personal income tax owed by the debtor. Only the years 1985, 1986 and 1987 are at issue.

The question is whether the debtor may deduct on her personal income tax return certain farm related expenses paid from her personal checking account. These expenses were related to the debtor's operation of a farming business, which she had organized as an S Corporation. The corporation filed returns and passed through gains and losses that are not in dispute. The expenses in question were not paid from the corporation's checking account and were not taken as deductions on the corporation's return. Disallowance of these deductions from other income on the debtor's personal returns resulted in the IRS' secured claim of over $32,000. The debtor's chapter 13 plan cannot be confirmed until her tax liability is resolved.

The parties briefed the issues and presented evidence at trial. The court will rule on the sole legal issue raised at trial, i.e., whether the debtor was engaged in an activity having a profit motive. 26 U.S.C. (I.R.C.) § 183. If the court determines that the debtor has a profit motive in an activity that produces taxable income and deductible expenses or losses, the debtor may deduct expenses and losses in excess of income from the activity, thus reducing other taxable income unrelated to the activity that gave rise to the deductions. If the debtor had no profit motive, the expenses that exceed income from the activity are not deductible.

The court will not calculate the tax or rule on the propriety of any particular deduction at this time. The final determination of the dollar amount of tax liability will be left to the parties, which they can calculate based on the legal findings in this decision. A further motion can be brought for resolution of these other matters, if necessary.

This court has jurisdiction in this contested matter pursuant to 28 U.S.C. § 1334(b); this is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following are the court's findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052.

## II. Facts

Joyce Wilhelm's family moved to the farm she now owns when she was a small child in 1948. She grew up working on the farm, helping with the family's dairy operation. She was married in 1963, and in January of 1968 she purchased the farm, then 120 acres, from her mother. Since she has been running it, the farm has been primarily a horse breeding (black Arabians) and training operation, although she raises some cattle and grows all of the feed for the animals. She also trains other people's horses.

The debtor was employed off the farm in 1968 and 1969, but she worked solely on the farm from 1970 until 1983. Her husband worked briefly off the farm after the marriage but was employed almost exclusively in farming until the spouses separated in 1979. Thus, during the 1970's, the farm was the family's sole source of support. The Wilhelms were divorced in 1982, with the debtor's former husband receiving 40 of the 120 acres pursuant to the decree of dissolution. The debtor has run the farm alone since 1979. During the tax years in question, she was the farm's sole regular employee, although she received help from time to time from a son and daughter and their friends, whom she paid or provided with room and board in return for work.

In 1977, some of the debtor's heifers broke loose, and a neighbor attempted to help recover them. The heifers took up with another neighbor's bull, and the neighbor who was attempting to help was gored. He sued the debtor and her husband, and they eventually paid $2,000–2,500 to satisfy the liability. Their attorney and accountant advised them to form a corporation that owned few assets to guard against this kind of liability in the future.

Thus, Ride–Away Ranch, Inc. was born. The debtor made an election under I.R.C. § 1361 to organize Ride–Away Ranch as an S Corporation. Two mares and their tack were transferred to the corporation, which would then own their foals. The corporation leased other horses, equipment, and real estate from the debtor, and the lease agreement called for payments to the debtor equal to the annual taxes, interest and depreciation on the leased property. There was no change in how the farm was run.

The debtor testified that due to financial difficulties brought on by the divorce, she was obliged to seek outside employment in 1983. She began selling insurance, which she was able to do because most of her calls could be done at night. Except for a few business meetings, she could still operate the farm as before. Her daughter testified that her mother would be up at 5:00 a.m., do farm chores until 2:30–3:00 p.m., and then start her insurance calls. She also cooked for whoever was working on the farm. During 1985–87, the debtor earned about $29,000 per year selling insurance. She stopped selling insurance in 1988, and virtually all of her income has been from her farm operation since that time.

When the corporation was established, a separate bank account was opened for farm income and expenses. The debtor used this account to prepare a ledger showing farm income and expenses, and every year she gave this to her accountant to use in preparation of the corporation's tax returns and her personal tax returns. She testified that occasionally a farm expense would be paid from her personal account, usually because that account had money and the corporate account did not. She prepared a list of these payments separately and sent them along with the ledger, and she assumed the accountant would deduct these in the proper place as well as those written on the corporate account. When the returns came back for her signature, usually a day or two before they were due, she signed them with little or no review and mailed them. She stated that she trusted her accountant completely. Her accountant deducted the farm related expenses that she paid personally on the schedule where she reported her income from the farm lease; they were not deducted on the corporate return.

The debtor was not only casual with which account was used to pay farm expenses, she paid little attention to the legalities of the lease of the real estate, equipment and animals. In two of the three years in question, the corporation did not pay rent, even though all the debtor had to do was write a check from the corporate account to her personal account. As far as she was concerned, she thought of herself as the farm as well as an individual; she thought of the S corporation as having no tax consequences, so there was no reason to do so.

The I.R.S. disagreed. Even if the debtor was the only person working for the corporation, the corporation and the individual are separate entities and must be treated as separate taxpayers. Furthermore, it decided that the debtor had two taxable activities. She (1) rented out real estate, equipment and animals for which she had an agreement for payment, and (2) she ran a farm corporation. They do not argue that she did not intend to make a profit on the farm or that the farming operation was a hobby. However, the lease payment was equal to the deductible expenses associated with the leased property. The net income in every year the lease was in effect would be zero. Once the I.R.S. determined the debtor did not have a profit motive for her rental activity, it disallowed the deduction of personally paid farm expenses in excess of her rental income.

The debtor filed a petition under chapter 13 of the bankruptcy code on January 6th, 1993. On January 19th, 1993, the IRS filed a proof of claim for $32,620.07 of secured and $18,300.00 priority debt, and the debtor filed an objection to that claim on July 22, 1993.

## III. Law

### A. Determination of Tax

The bankruptcy code provides bankruptcy courts with the authority to "determine the amount or legality of any tax" assessed against debtors. 11 U.S.C. § 505(a)(1). Since this dispute has come before the court in the context of the claims objection process, however, the court need not resort to section 505 of the bankruptcy code to determine the debtor's tax liability. *See*, Sheinfeld, Witt and Hyman, *Collier on Bankruptcy Taxation*, 1993 at §§ 5.03[1], 5.04[2].

### B. Burden of Proof

■ This case presents an interesting legal dilemma regarding the burden of proof in bankruptcy proceedings in which tax claims are challenged. It is well-established in bankruptcy law that a properly filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. 11 U.S.C. §§ 501, 502(a); Fed.R.Bankr.P. 3001(f). The objecting debtor or trustee initially has the burden of presenting evidence to rebut the prima facie validity of the claim. Once this is accomplished, a creditor must present evidence as to the claim's validity, and the ultimate burden of proof is on the creditor. *Matter of Dahlman Truck Lines, Inc.*, 59 B.R. 218, 219 (Bankr.W.D.Wis.1986). The burden is, therefore, just as it would be in a non-bankruptcy lawsuit in which the creditor is attempting to recover money from the debtor. *In re Premo*, 116 B.R. 515, 518, 90–2 USTC ¶ 50,396 (Bankr.E.D.Mich.1990).

■ In tax law, however, the IRS enjoys a presumption that its notice of deficiency constitutes a valid claim, and the taxpayer must present evidence to prove the Service's assessment is wrong. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935). Thus, the relevant non-bankruptcy law in this situation puts the burden of persuasion on the debtor/taxpayer.

Several bankruptcy courts have addressed this problem; some have decided that non-bankruptcy law, which puts the burden of persuasion on the taxpayer, controls, while others have held that the burden established by bankruptcy law should apply to all claimants in bankruptcy. Under the latter view, the debtor need only produce enough evidence to rebut the presumption in order to shift the ultimate burden of persuasion back to the claimant. *Compare Resyn Corp. v. U.S.*, 851 F.2d 660, 63 A.F.T.R.2d 89–757, 88–2 USTC ¶ 9420 (3rd Cir. (N.J.) 1988), and *In re Cobb*, 135 B.R. 640 (Bankr.D.Neb.1992), (ultimate burden of persuasion is on debtor/taxpayer notwithstanding bankruptcy law) with *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696 (5th Cir. (Tex.) 1988), and *Matter of*

*Federated Dept. Stores, Inc.,* 135 B.R. 950, 69 A.F.T.R.2D 92–731 (Bankr.S.D.Ohio 1992), (ultimate burden of persuasion on claimant/IRS in bankruptcy once prima facie case has been rebutted). *See also Premo, supra,* which discusses the conflicting case law on this issue at length.

The Seventh Circuit Court of Appeals, by whose decisions this court is bound, has not directly addressed this issue. In *U.S. I.R.S. v. Charlton,* 2 F.3d 237, 72 A.F.T.R.2d 93–5723, 93–2 USTC ¶ 50,469, (7th Cir. (Wis.) 1993), the Seventh Circuit placed the burden of persuasion on the debtor in litigation over an I.R.C. § 6672 penalty claim for failure to withhold. The *Charlton* court, however, did not address the conflict concerning the burden of proof which arises when tax claims are litigated in bankruptcy court.

After examining the case law on the burden of proof issue, this court believes that the apparent conflict among courts that have addressed the issue is not as great as it may seem to be. The proof of claim filed by the IRS in this case is prima facie proof of the validity and amount of its claim, just as the notice of deficiency establishes a presumption of validity in tax law. In both instances the debtor initially bears the burden of presenting evidence. If the debtor does nothing, the I.R.S. wins. The amount of evidence necessary to rebut a bankruptcy claimant's prima facie case is not great. *In re Schaumburg Hotel Owner Ltd. Partnership,* 97 B.R. 943, 950 (Bankr.N.D.Ill.1989). A taxpayer seeking to rebut the prima facie presumption accorded the IRS has a somewhat greater burden, especially when the taxpayer is seeking the allowance of deductions. *Weir v. C.I.R.,* 283 F.2d 675, 679, 60–2 USTC ¶ 9763 (6th Cir.1960). In either situation, however, the government's assertion of the amount of tax due establishes a prima facie case but is not absolutely determinative.

Allocating the burden of proof is often essential in disputes over tax claims because, in many cases, crucial evidence no longer exists or the amount of liability is not readily provable and the IRS' claim has been estimated. *See, e.g., I.R.S. v. Levy,* 130 B.R. 28 (E.D.Va.1991); *In re Fidelity America Financial Corp.,* 91–1 USTC (CCH) ¶ 50,161, 1990 WL 299418 (Bankr.E.D.Pa.1990). This is not true in the present case. Both parties have access to all the books, records and other necessary evidence. The amount of the claimed deductions is on the returns themselves. The relevant facts in this case are not disputed.

The burden of persuasion is allocated to the taxpayer in tax cases as a means of encouraging accurate record keeping and because the taxpayer generally has better access to the crucial evidence. *Psaty v. U.S.,* 442 F.2d 1154, 71–1 USTC ¶ 9346 (3rd Cir. (N.J.) 1971). Again, these policy concerns do not apply to the present case. The debtor kept good records of her income and expenditures, and both parties have complete access to these records.

The bankruptcy-related policy concerns involved in the allocation of the burden of proof include the well known policy of equal treatment of similarly situated creditors. While this particular debtor has reached a settlement with the Wisconsin Department of Revenue and had only one other small creditor, the policy considerations in allocating the burden of proof nevertheless apply. The debtor cannot retain her farm, reorganize and pay the creditors she has without chapter 13 relief.

■ Wigmore has stated that, "burden of proof allocations are governed by principles of fairness, common sense, and logic." 9 J. Wigmore, *Evidence in Trials at Common Law,* § 2486 at 290. In the present case, these concerns dictate that the claimant bear the ultimate burden of proving the accuracy of its assessment. The case law on this issue is divided with neither side making an overwhelmingly convincing argument. The policy considerations which place the burden of persuasion on the taxpayer are unpersuasive when the taxpayer is in bankruptcy, especially under the present circumstances. Conversely, the policy goals of the bankruptcy system are put at risk when one class of creditors is given the benefit of a favorable presumption which has its origins outside of bankruptcy law. This court therefore will follow the line of cases which places the ultimate burden of persuasion in these cases on the IRS.

### C. *26 U.S.C. § 183*

There are two disputed issues in this case which are governed by 26 U.S.C. § 183 and the regulations promulgated thereunder ("Activities not engaged in for profit"):

(1) Claimant IRS asserts, and debtor denies, that the debtor's farming activity and the debtor's rental activity constituted two separate activities for the purposes of Treasury Reg. § 1.183–1(d).

(2) Claimant IRS asserts, and debtor denies, that the debtor's rental activity was "not engaged in for profit" and therefore, under I.R.C. § 183, the debtor may not deduct her expenses associated with that activity to the extent they exceed the income associated with the rental activity.

1. Did debtor's rental and farming activities constitute "separate activities" for the purposes of Treasury Reg. § 1.183–1(d)?

Treasury Reg. § 1.183–1(d)(1), "Activity defined," provides:

> where the taxpayer is engaged in several undertakings, each of these may be a separate activity, or several undertakings may constitute one activity. In ascertaining the activity or activities of the taxpayer, all the facts and circumstances of the case must be taken into account. . . . Generally, the Commissioner will accept the characterization by the taxpayer of several undertakings either as a single activity or as separate activities . . . If the taxpayer engages in two or more separate activities, deductions and income from each separate activity are not aggregated either in determining whether a particular activity is engaged in for profit or in applying section 183.

The IRS argues that the rental activity is separate from the farming activity and, therefore, these two separate activities should be examined individually for the purposes of section 183. In light of the IRS' opinion that the debtor's rental activity, as opposed to the farming activity, is not engaged in for profit (see # 2 below), the farm expenses paid by the debtor and not the corporation are not deductible from the debt-or's personal income to the extent that they exceed the income from the rental activity. The debtor maintains that the rental of the animals, equipment and real estate to the corporation and the corporation's horse breeding and farming activities are all one undertaking which was operated by the debtor for profit.

Treas. reg. 1.183–1(d) lists some considerations which may be relevant to the "separate activity" determination. The list is non-exclusive and includes such considerations as "the degree of organizational and economic interrelationship of various undertakings," and "the business purpose which is (or might be) served by carrying on the various undertakings separately or together in a trade or business."

When the debtor formed her S corporation, she had to either transfer the equipment, animals, and real estate to the corporation or lease them to it. A farming corporation obviously cannot operate without real estate and livestock. Similarly, the rental activity would have no purpose without the farming operation to occupy and use the leased property, thus generating the income to make lease payments. The debtor's rental activity and her farming activity clearly have a close "organizational and economic interrelationship" in that each is entirely dependent on the other's existence. Such arrangements are often treated as separate activities, but here the debtor considered them one operation in that her activities did not change when the corporation was formed, and she paid little attention to the formalities of keeping them separate. She paid so little attention to the separateness of the activities that she failed to pay any rent during two of the three years in question, deeming such payments of no importance.

Taking all the facts and circumstances into account, therefore, the court finds that the debtor's farming and rental undertakings represent a single activity for the purposes of the I.R.C. and its regulations.

2. Was debtor's rental activity engaged in for a profit for the purposes of Treasury Reg. § 1.183?

The court's holding in the preceding section of this decision essentially renders this

second question moot. It is irrelevant whether the debtor intended to earn a profit from her rental activity alone. The IRS has indicated, however, that it does not consent that the farming operation as a whole was operated for a profit.

■ Treasury Reg. § 1.183–2 defines "activity not engaged in for profit" and gives some guidance as to how this determination should be made. The determination, "is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case." Reg. § 1.183–2(a). Subsection (b) of the regulation includes a nonexhaustive list of nine "relevant factors" which may be taken into account as the particular circumstances dictate. These include such considerations as the extent to which the activity is carried on in a business-like manner, the time and effort expended in the activity, the taxpayer's history of success in the business, the financial status of the taxpayer, the element of pleasure in the activity, and other similar considerations. These factors are not to be mechanically applied to produce a formula result. Reg. § 1.183–2(b). Nonetheless, it appears that at least six or seven of the "relevant factors" are in the debtor's favor in this case. Certainly the debtor carried on her horse breeding/farming operations in a "businesslike" manner, just as she had done for the previous 20 years. Records were kept of the business' income and expenses. Ms. Wilhelm worked long hours each day to keep her horse breeding/farming operation running; this was not a hobby she maintained over the years for personal pleasure. Furthermore, the farming activity had supported the debtor and her family for many years. Only in 1983 did Ms. Wilhelm first seek an outside source of income, and the employment she sought (selling insurance) did not affect her ability to continue operating the farming business. She has not had significant outside employment since she ceased selling insurance in 1988. This is a full time occupation, not a hobby.

Claimant is correct in asserting that the lease arrangement between the debtor and her corporation is by its terms not a profit-making activity. The court finds, however, that the farming/horse breeding activity, as a whole, qualifies as an activity engaged in for profit. The debtor intended to make a profit through her corporation and the lease arrangement is only a part of her overall scheme.

The fact that the lease arrangement between the debtor and her corporation did not allow for a profit is not unusual. Ms. Wilhelm was apparently not particularly concerned with the legal fiction which created a distinction between herself and her corporation. See, e.g., William J. Kuhn, Jr. v. Commissioner, 1992–460 T.C.M. (CCH), 1992 WL 193604. The court in Kuhn, under similar facts, stated, "we think that petitioner was largely indifferent as to the rental price (considering the matter a mere accounting necessity lacking economic importance) and was largely indifferent as to whether he or his corporation got the better end of that deal." Id. at 491. The lease that Ms. Wilhelm arranged with her corporation was also an "accounting necessity." Whether she or her corporation profited from the rental activity was unimportant to Ms. Wilhelm, just as was, apparently, which entity paid which expenses.

This court has held that the debtor's farming activity as a whole was operated for a profit (see court minutes). It further holds that the rental of the farm, animals and equipment is not a separate activity. In pursuing a profit for the overall business, the debtor was unconcerned whether she benefitted directly (from increased rental income), or indirectly (from lower corporate rental expenses) from the terms of the lease.

IV. *Conclusion*

In settling the proper amount of claims against the chapter 13 estate, the bankruptcy court sits as a court of equity and may "sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton,* 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). Here, the IRS seeks to deliver a "gotcha" to an inattentive taxpayer who is more concerned with running her farm than with accounting. If allowed to do so, the debtor would be unable to

confirm a plan and would probably lose her land and animals.

The I.R.S. asserts that the commissioner may either disregard the form of a transaction and recognize its true substance, or it may bind the taxpayer to its chosen form regardless of substance as it sees fit. *See* I.R.S. trial brief at 8. Apparently this can be done without regard to fairness, since the government cites no such requirement. This doctrine, argues the I.R.S., allows it to view the debtor's farming activity and its rental activity as "separate activities" for the purposes of I.R.C. section 183. I.R.S. cites the familiar passage from *Higgins* to support its assertion:

> [T]he Government may not be required to acquiesce in the taxpayer's election of that form for doing business which is most advantageous to him. The government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction *as best serves the purposes of the tax statute.* To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation. (emphasis added).

*Higgins v. Smith,* 308 U.S. 473, 477–78, 60 S.Ct. 355, 358, 84 L.Ed. 406 (1940).

The I.R.S. seeks to use this doctrine to bind the debtor and saddle her with over $32,000 in tax liability, thereby, in all likelihood, defeating her efforts to repay her debts through a chapter 13 plan. The quoted passage, however, clearly states that the commissioner may exercise its discretion in this area in order to serve the purpose of the relevant tax statute, here, section 183. The I.R.S.' position in this adversary proceeding would lead one to believe that the purposes of section 183 were "to raise additional revenue" or "to punish oversight." Legislative history, however, indicates otherwise.

Section 183 was originally enacted as section 213 of the Tax Reform Act of 1969 "to prevent high income taxpayers from profiting through the harvesting of their taxes rather than their farms." *Fisher v. C.I.R.,* T.C. Memo 1980–183, 40 T.C.M. (CCH) 398,

T.C.M. (P–H) ¶ 80,183, 1980 WL 4029 (U.S.Tax Ct.1980). Congress was attempting to address the situation in which taxpayers were willingly generating losses to offset income from other sources. *Faulconer v. C.I.R.,* 748 F.2d 890, 893, 55 A.F.T.R.2d 85–302, 84–2 USTC ¶ 9955 (4th Cir.1984); *see also* S.Rept. No. 91–552, 91st Cong., 1st Sess., 103 (1969), U.S.Code Cong. & Admin.News 1969, 1645, 1969–3 C.B. 423, 489. This act stemmed in part from congress' perception that, "[w]ealthy individuals have invested in certain aspects of farm operation solely to obtain "tax losses"—largely bookkeeping losses—for use to reduce their tax on other income." *Id.* at 635 (individual views of Sen. Albert Gore).

It is difficult to see how the commissioner's exercise of its discretion under *Higgins* serves the purpose of section 183 in the present case. Ms. Wilhelm is hardly a "high income taxpayer." She is a chapter 13 debtor. It is unlikely that Ms. Wilhelm carried on her rental activity over the years in question merely to offset her income from other sources because during most of her adult life, there have been no other sources. This is not a situation in which the taxpayer pursued a hobby which generated losses while living comfortably on a separate income. *See Engdahl v. Commissioner,* 72 T.C. 659, 670, 1979 WL 3705 (U.S.Tax Ct., 1979).

The I.R.S. also attempts to use the debtor's S corporation election to separate the activities of the corporation (farming) from the activities of the debtor (renting) and thereby create a significant tax liability. The purpose of the subchapter S option, however, is to give tax relief to small businesses and to eliminate tax consequences as a factor in a small business' selection of a form of business organization. *Fulk & Needham, Inc. v. U.S.,* 288 F.Supp. 39, 68–2 USTC ¶ 9517 (M.D.N.C.1968), *aff'd* 411 F.2d 1403 (4th Cir. 1969). The IRS' position in this dispute would accomplish the exact opposite of congressional policy in establishing the Subchapter S election in that Ms. Wilhelm's S corporation election would have a significant tax consequence; specifically, the S corporation election would add approximately $32,000 in tax liability which the debtor otherwise would

not owe (i.e., if her farm were still operated as a sole proprietorship.) Ms. Wilhelm decided to incorporate her business for legitimate non-tax reasons. This decision should not make otherwise allowable deductions unavailable to the debtor.

Therefore, this court holds that the debtor's rental and farming activities are a single operation and were being operated during the tax years at issue with an intent to earn a profit.

A separate order, prepared by debtor's counsel in accordance with these findings, will be entered.