83 F.3d 1041
 64 USLW 2726, 35 Collier Bankr.Cas.2d 1272,
Bankr. L. Rep. P 77,002,
96 Cal. Daily Op. Serv. 3363,
96 Daily Journal D.A.R. 5487
 In re Stephen MACFARLANE, Debtor.
FRANCHISE TAX BOARD OF the STATE OF CALIFORNIA,
Creditor-Appellant-Cross-Appellee,
v.
Stephen MACFARLANE, Debtor-Appellee-Cross-Appellant.
 Nos. 94-56064, 94-56065.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 6, 1996.
Decided May 13, 1996.
 
 Anthony Sgherzi, Deputy Attorney General, Los Angeles, California, for appellant-cross-appellee Franchise Tax Board of the State of California.
 Elmer Dean Martin III, Diamond Bar, California, for appellee cross-appellant debtor Stephen B. Macfarlane.
 On Appeal from the United States District Court for the Southern District of California; John S. Rhoades, District Judge, Presiding. D.C. No. CV-93-01435-JSR.
 Before: SKOPIL, Senior Circuit Judge, CANBY, and LEAVY, Circuit Judges.
 SKOPIL, Senior Circuit Judge:
 
 
 1
 We address in these appeals which party has the ultimate burden of proof in bankruptcy proceedings when a state files a claim for taxes alleging that a debtor's bad debt deductions are invalid. Both the bankruptcy and district courts held that the state bears the burden of proving its claim. The bankruptcy court determined that the state failed to meet its burden and entered judgment in favor of the debtor; the district court reversed, ruling that inferences drawn from the evidence create triable issues of fact. We affirm the allocation of the burden of proof; we reverse the district court's ruling and we reinstate and affirm the judgment of the bankruptcy court.
 
 I.
 
 2
 Stephen B. Macfarlane (debtor) filed for bankruptcy in 1990. The Internal Revenue Service (IRS) filed a claim alleging that he owed additional taxes for 1988-89 because certain bad debt deductions were invalid. At issue were cash advances made by debtor to his financial consultant and accountant, William Cheng, in exchange for unsecured promissory notes. The IRS contended that the advances were failed investments rather than loans. The claim was settled.
 
 
 3
 The California Franchise Tax Board (Board) thereafter filed its claim in bankruptcy court for state income taxes based on the invalidity of the same bad debt deductions. The bankruptcy court ruled that the Board's claim was prima facie valid; that debtor timely filed an objection to the claim; and that debtor provided the court with sufficient evidence to establish that the debts existed in 1988-89 and became worthless in those respective years. The court ruled that the burden shifted to the Board to prove the factual basis for its claim. The court continued the proceedings to allow the Board to conduct discovery to support its claim.
 
 
 4
 The Board elected not to conduct discovery or to submit evidence. On the basis of the evidence submitted by debtor, the bankruptcy court entered the following findings of fact:
 
 
 5
 1. The California Franchise Tax Board filed its claims in the above captioned case for income taxes, interest, additions and penalties claimed to be due from Debtor measured by his taxable income for 1988 and 1989.
 
 
 6
 2. The Debtor filed an objection to such claims, offered admissible evidence in opposition to such claims, and requested a determination of his personal liability and the liability of his estate in the above captioned case.
 
 
 7
 3. Debtor timely filed income tax returns for 1988 and 1989 with the California Franchise Tax Board claiming as deductions from income nonbusiness bad debt amounts claimed to be due to Debtor from William Cheng.
 
 
 8
 4. The deductions claimed by Debtor on these returns were $1,400,000 for 1988 and $1,378,141 for 1989.
 
 
 9
 5. Prior to December 31, 1988, Cheng had obtained at least $1,632,500 from Debtor and promised to repay this amount.
 
 
 10
 6. In 1989 Cheng obtained an additional $2,047,232 to $2,224,077 from Debtor and promised to repay this amount.
 
 
 11
 7. Cheng prepared Debtor's 1988 and 1989 California Franchise Tax Board income tax returns which claimed the deductions described in statement number 4 above for amounts due from Cheng.
 
 
 12
 8. Cheng knew when he prepared Debtor's 1988 and 1989 California Franchise Tax Board income tax returns that he could not repay the amounts he had borrowed from Debtor and accordingly prepared the returns to claim a loss for amounts due from him.
 
 
 13
 9. In April 1991 Cheng commenced a bankruptcy case under Chapter 13 of Title 11 U.S.C., and his case was converted to Chapter 7 in May 1991. Cheng admitted in his bankruptcy schedules of liabilities that he was indebted to Debtor in the amount of $2,939,722.00.
 
 
 14
 10. Cheng's bankruptcy estate has little or no value.
 
 
 15
 11. The primary asset of Cheng's estate was stock in Cheng Information Systems, Inc.
 
 
 16
 12. All of the property of Cheng Information Systems, Inc. was sold by its trustee for $2,500.
 
 
 17
 13. On December 31, 1988 and December 31, 1989, Cheng's promises to pay Debtor amounts owed to him as of such dates were worthless.
 
 
 18
 14. As of December 31, 1988 and December 31, 1989, Debtor had no realistic prospect of recovery from Cheng of any of the amounts then due to Debtor.
 
 
 19
 15. Cheng was unable to obtain a loan in 1988 or 1989 without Debtor's accommodation as a co-maker.
 
 
 20
 16. Debtor and Cheng signed documents evidencing an intent to enter into a debtor and creditor relationship and each stated orally to witnesses from time to time that a debtor-creditor relationship between them existed.
 
 
 21
 17. Cheng was in dire financial straits in 1988 and by the end of 1989 was living off loans.
 
 
 22
 18. Debtor loaned a total of $4,529,349 to Cheng.
 
 
 23
 On the basis of these findings, the bankruptcy court ruled that "Cheng was indebted to Debtor in the amounts and at the times claimed by Debtor, and such debts were worthless on December 31, 1988 and December 31, 1989 as claimed by Debtor." Judgment was entered in favor of debtor.
 
 
 24
 The Board appealed to the district court. The district court agreed with the bankruptcy court that the Board has the ultimate burden of proving its tax claim in bankruptcy proceedings. The court also agreed that whether debtor's transactions were loans and whether those loans became worthless are questions of fact. The district court reviewed the record and concluded that "[b]ased on the facts presented and the reasoning of the authorities cited ..., the court finds the bankruptcy court's ruling was not clearly erroneous and affirms the bankruptcy court's findings of fact."
 
 
 25
 Notwithstanding that affirmance, the district court concluded that although the Board submitted no evidence and the bankruptcy court's findings were not clearly erroneous, inferences drawn from debtor's evidence raise triable issues of fact. The district court entered judgment affirming the bankruptcy court's findings of fact, but reversing the bankruptcy court's judgment.
 
 II.
 
 26
 We are confronted initially by a jurisdictional concern that the district court's reversal of the bankruptcy court's judgment is not a final order because further proceedings in bankruptcy court are contemplated. Appellate jurisdiction exists only when the bankruptcy and district courts' decisions are final orders. In re Dominguez, 51 F.3d 1502, 1506 (9th Cir.1995). We have taken a pragmatic approach, however, to determining finality for purposes of asserting jurisdiction arising from a district court's review of a bankruptcy decision. See In re United Ins. Manag., Inc., 14 F.3d 1380, 1384 (9th Cir.1994). The district court's order will be considered final even if it remands for further proceedings in the bankruptcy court. See id.; In re Sambo's Restaurants, Inc., 754 F.2d 811, 814-15 (9th Cir.1985). Thus, we have jurisdiction. Our standard of review is the same as that of the district court. In re DAK Indus., Inc., 66 F.3d 1091, 1094 (9th Cir.1995). "Therefore, we review the bankruptcy court decision directly." Id. The bankruptcy court's findings of fact are reviewed for clear error; its conclusions of law are reviewed de novo. Id.
 
 III.
 
 27
 There is no question that outside the bankruptcy forum, a taxpayer bears the ultimate burden of proving entitlement to a deduction. United States v. General Dynamics Corp., 481 U.S. 239, 245, 107 S.Ct. 1732, 1737, 95 L.Ed.2d 226 (1987). The government's initial burden is satisfied by filing a claim that is deemed to be presumptively accurate. McKay v. United States, 957 F.2d 689, 691 (9th Cir.1992). The burden of proof then shifts to the taxpayer. Oliver v. United States, 921 F.2d 916, 919 (9th Cir.1990). The taxpayer is required to prove the merits of a claimed deduction by a preponderance of the evidence. Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir.), cert. denied, 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975). Similarly, under California law, a taxpayer claiming a deduction bears the ultimate burden of proving facts to justify the deduction. Krumpotich v. Franchise Tax Bd., 26 Cal.App.4th 1667, 1671, 31 Cal.Rptr.2d 896, 899, review denied (Oct. 13, 1994).
 
 
 28
 In bankruptcy proceedings, a properly filed claim constitutes prima facie evidence of the validity and amount of the claim. 11 U.S.C. §§ 501, 502(a). The debtor or trustee has the burden of presenting evidence to rebut this prima facie validity. If that burden is met, the creditor must present evidence to prove the claim. The ultimate burden of proof therefore is on the creditor. See In re Holm, 931 F.2d 620, 623 (9th Cir.1991); United States v. Sampsell, 224 F.2d 721, 722-23 (9th Cir.1955).
 
 
 29
 Courts have struggled in deciding whether to import the taxpayer's ultimate burden of proof into bankruptcy proceedings. See, e.g., In re Wilhelm, 173 B.R. 398, 401-02 (Bankr.E.D.Wis.1994) (deciding that IRS bears ultimate burden); In re Premo, 116 B.R. 515, 518-24 (Bankr.E.D.Mich.1990) (same). Unfortunately, "[t]he case law on this issue is divided with neither side making an overwhelmingly convincing argument." Wilhelm, 173 B.R. at 402. The Fifth, Eighth and Tenth Circuits reviewed the issue and concluded that the taxing authority bears the ultimate burden of proof in bankruptcy proceedings. See Matter of Placid Oil Co., 988 F.2d 554, 557 (5th Cir.1993); In re Gran, 964 F.2d 822, 827-28 (8th Cir.1992); In re Fullmer, 962 F.2d 1463, 1466 (10th Cir.1992). The Third and Fourth Circuits reached the opposite conclusion. Resyn Corp. v. United States, 851 F.2d 660, 663 (3d Cir.1988); In re Landbank Equity Corp., 973 F.2d 265, 268-72 (4th Cir.1992).
 
 
 30
 The Board urges us to adopt the reasoning of Landbank that bankruptcy courts are generally required to apply the substantive law under which the claim arose, that there is no indication that Congress implicitly intended the bankruptcy code to amend the substantive tax law regarding the taxpayer's burden of proof, and that equity considerations do not provide a basis for shifting the taxpayer's burden of proof to the government. Landbank, 973 F.2d at 270-72. While we agree with the Board that Landbank is strong support for the Board's position, we do not agree with its analysis or conclusion. Nor do we consider Landbank controlling or persuasive because it is the only circuit decision to rule specifically on the allocation of burdens in a bankruptcy proceeding when a debtor's bad debt deduction is challenged. Other circuit decisions clearly establish a broad rule that taxing authorities are to be treated the same as other claimants and must therefore bear the ultimate burden of proving their claims in bankruptcy. See, e.g., Matter of Fidelity Holding Co., 837 F.2d 696, 698 (5th Cir.1988) ("The Bankruptcy Code ... does not differentiate between government and private claimants when proofs of claim are filed."). The logic of that rule is compelling to us, and accordingly, we hold that the taxing authority has the ultimate burden of proof in the bankruptcy forum.
 
 
 31
 The bankruptcy code is silent on the allocation of the ultimate burden of proof in this case. In the absence of a statutory directive, we consider it appropriate to turn to policy considerations that underlie the bankruptcy code. The district court concluded that it should balance the equities "between the Board and the other creditors of Debtor's estate." The court reasoned that since tax claims already receive a statutory priority over other creditor's claims, 11 U.S.C. § 507(a)(8)(A), relieving the Board of its burden of proof "would be granting the Board a double benefit not authorized by statute or Ninth Circuit authority." We agree. "[T]he policy goals of the bankruptcy system are put at risk when one class of creditors is given the benefit of a favorable presumption which has its origins outside of bankruptcy law." Wilhelm, 173 B.R. at 402. Accordingly, we affirm the bankruptcy and district courts' rulings that the taxing authority has the ultimate burden of proving its claim in bankruptcy proceedings.
 
 IV.
 
 32
 A bad debt deduction can be claimed when there is a bona fide debt and the debt became wholly worthless during the year claimed. See 26 U.S.C. § 166(d); Cal.Rev. & Tax.Code § 17201. The bankruptcy court reviewed the evidence submitted by debtor and found that these requirements had been fulfilled. The district court affirmed the bankruptcy court's findings. We also conclude that the bankruptcy court's findings are not clearly erroneous.
 
 
 33
 That conclusion would normally end our inquiry in favor of debtor, but here the district court reversed the bankruptcy court's judgment. The district court ruled that inferences drawn from debtor's evidence raise triable issues of fact that preclude summary judgment. There is clearly doubt, however, whether the bankruptcy court entered summary judgment. The fact that the bankruptcy court resolved factual disputes, entered findings of fact, and made conclusions of law belie the contention that summary judgment procedures were used. See Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1472 (9th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994). Rather, it appears that the bankruptcy court ruled in favor of debtor because he submitted sufficient evidence to rebut the Board's claim, and the Board failed to carry its burden of proof.
 
 
 34
 Nevertheless, even if summary judgment standards are applied, we agree with debtor that the bankruptcy court's decision should be affirmed. "Once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence sufficient to support a jury verdict in [its] favor." Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959 (9th Cir.1994) (quotation omitted). "This requires the nonmoving party to go beyond the pleadings and show by ... affidavits, or by the depositions, answers to interrogatories, or admissions on file, that a genuine issue of material fact exists." Id. (quotations omitted).
 
 
 35
 The Board submitted no evidence of its own, but rather sought to rely on alleged inconsistencies in debtor's evidence. We agree with debtor that the Board's reliance on this evidence is insufficient to meet its burden of proving its claim; the claimed inconsistencies are insubstantial and do not create genuine issues of material fact. The judgment of the district court is REVERSED and the case REMANDED to the bankruptcy court for entry of judgment in favor of Macfarlane.
 
 
 36
 REVERSED and REMANDED.