ENGEL, Senior Circuit Judge.
 

 Taxpayer Earl Charlton appeals the district court’s order affirming the bankruptcy court’s decision holding him personally liable under section 6672 of the Internal Revenue Code for the unpaid employment taxes of five Wisconsin restaurants. This appeal requires us to determine whether the evidence was sufficient to establish that Charlton was a “responsible person,” with a duty to remit withheld taxes to the government, within the meaning of section 6672. Because we conclude that the evidence was sufficient, we affirm.
 

 I
 

 Earl Charlton has been a practicing attorney since 1950. In the late 1970s, Charlton invested in a group of five restaurants, known collectively as the Left Guard, created by former Green Bay Packer Frederick (Fuzzy) Thurston. These restaurants were located in Eau Claire, Madison, Janesville, Milwaukee, and West Allis, Wisconsin.
 
 [1]
 
 Charlton purchased a large number of shares of stock in each restaurant and was elected to the boards of directors of four of them. He was eventually named the secretary of the West Allis and Janesville restaurants. In 1978, when the shareholders created a holding company for the five restaurants, Charlton was designated its registered agent and secretary.
 

 In 1979, Charlton performed a number of official functions in his various capacities. He executed a resolution granting the assistant secretary and others the authority to sign payroll checks at the West Allis restaurant. He executed a second resolution authorizing him to borrow money and to endorse or assign checks, certificates of deposit and other commercial paper. He executed a loan guarantee and completed an alcoholic beverage license renewal application for the West Allis restaurant, a task which required information concerning the restaurant’s finances. Charlton executed a resolution authorizing the sale and leaseback of the Mil
 
 *239
 
 waukee restaurant’s equipment. He also signed a $350,000 note to an investment partnership to cover a loan to the holding company, and he disbursed to an attorney a check in payment for legal services rendered on behalf of the holding company. By late 1978, Charlton had invested a total of $85,000 in the restaurants. By mid-1979, this sum had grown to $143,000, and Charlton had loaned an additional $70,000 to the restaurants.
 

 On July 31, 1979, Charlton read in a local paper that the IRS had filed tax liens against the West Allis, Janesville, and Eau Claire restaurants. Shortly thereafter, he mailed a check to the Service in payment of the Eau Claire restaurant’s unpaid employment taxes.
 
 [2]
 
 On August 9, he instructed a bank to set aside $35,000 from the proceeds of the recent $350,000 loan in order to pay the taxes due from the West Allis restaurant. The next day, the Left Guard’s attorney wrote the IRS to inform the Service that he had advised Charlton and another shareholder of the tax liens. He also informed the IRS that one of the investors would pay the Service $4,000 immediately and $4,000 per week thereafter until the deficiencies were remedied. On August 17, Charlton disbursed a $4,000 check to the IRS in payment of the West Allis restaurant’s unpaid taxes. He also informed the service that it would receive another check in the same amount during the following week.
 

 In November of 1979, Charlton and the other Left Guard investors decided to partition their interests in the restaurants. As the result of an agreement between them, Charlton and one other investor relinquished control over the Eau Claire, Madison and Janesville restaurants, and assumed complete ownership of the holding company and of the Milwaukee and West Allis restaurants. The holding company also gave up its interest in the Eau Claire, Madison, and Janes-ville restaurants.
 

 On the following day, Charlton and his partner met with an IRS revenue officer and discussed the tax liability of all five restaurants. A week later, Charlton executed an agreement whereby a management company took over day-to-day operation of the Milwaukee and West Allis restaurants. In January of 1980, Charlton, in his capacity as secretary of the West Allis restaurant, authorized members of the management company to sign payroll checks.
 

 In 1981, Charlton filed a petition for bankruptcy under Chapter 11. In 1983, the IRS filed a claim against the bankruptcy estate in the amount of approximately $158,000, representing unpaid taxes associated with the Left Guard restaurants. The Service’s claim was premised upon 26 U.S.C. § 6672, which provides that persons responsible for the withholding and payment to the IRS of employment taxes who willfully fail to do so may be held personally responsible.
 

 The bankruptcy court ruled that Charlton was such a “responsible person” with respect to all five of the restaurants prior to the November, 1979 partition of interests, and that he was thereafter responsible for the unpaid taxes associated with the Milwaukee and West Allis restaurants.
 
 In re Charlton,
 
 No. 81-01019 (Bankr.E.D.Wis. July 1, 1989) (Memorandum Decision). The district court affirmed,
 
 United States v. Charlton,
 
 144 B.R. 845 (E.D.Wis.) (Order), and Charlton now appeals.
 

 II
 

 26 U.S.C. § 6672(a) provides as follows:
 

 Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....
 

 Under this section, the burden is on the taxpayer to disprove the Service’s claim by a preponderance of the evidence.
 
 Ruth v.
 
 
 *240
 

 United States,
 
 823 F.2d 1091, 1093 (7th Cir.1987). Because Charlton does not contest the lower courts’ finding that his failure to remit the taxes was willful, the only issue is whether the evidence was insufficient to establish that Charlton was not a “responsible person” for purposes of section 6672.
 

 The Internal Revenue Code defines “person” as “an officer or employee of the corporation ... who as such officer or employee ... is under a duty to perform the act in respect of which the violation occurs.” 26 U.S.C. § 6671(b). Whether such a duty exists depends on whether the taxpayer has “significant control or authority over an enterprise’s finances or genera] decision-making.”
 
 Ruth,
 
 823 F.2d at 1094. Relevant factors include the holding of an entrepreneurial stake in a company, the holding of corporate office, the authority to disburse funds on behalf of the company, the ability to take out loans on behalf of the company and the ability to hire and fire employees.
 
 Bowlen v. United States,
 
 956 F.2d 723, 728 (7th Cir.1992);
 
 Thomsen v. United States,
 
 887 F.2d 12 (1st Cir.1989). The true objective of this inquiry, and the
 
 sine qua non
 
 of liability under section 6672, is a determination that the taxpayer had the authority to allocate funds to pay the company’s other debts in preference to its debt to the IRS.
 
 Bouden,
 
 956 F.2d at 728;
 
 Monday v. United States,
 
 421 F.2d 1210, 1214 (7th Cir.1970).
 

 As an initial matter, we must determine the standard of review. Charlton argues that questions of whether a given set of facts satisfies a given legal standard are subject to plenary review. This argument is unavailing. As this court has stated, the legal significance of historical facts is itself a question of fact, and it may not be overturned on appeal unless clearly erroneous.
 
 Mucha v. King,
 
 792 F.2d 602, 604 (7th Cir.1986). Thus, a court’s determination of whether a taxpayer was a “responsible person” for purposes of section 6672 may not be overturned absent clear error.
 
 Gustin v. United States,
 
 876 F.2d 485, 491 (5th Cir.1989).
 

 Viewing the evidence with this standard in mind, we cannot deem the lower courts’ findings erroneous. Charlton held a substantial entrepreneurial stake in the organization, and he was a member of the boards of directors of all of the corporations and the secretary of several of them. He had the authority both to borrow money on behalf of the corporations and to disburse the companies’ funds. Indeed, he demonstrated his authority to disburse funds to the IRS on several occasions. This evidence strongly supports a finding that Charlton was a responsible person for purposes of section 6672.
 

 Charlton attempts to avoid liability by distinguishing authority from responsibility. He argues that, while he had the titular authority to disburse the corporations’ funds, he had delegated the responsibility to others. He specifically points to the agreement whereby he authorized the management company to disburse funds.
 

 This argument is unavailing. The delegation of disbursal authority does not relieve the delegator of liability.
 
 Bowlen,
 
 956 F.2d at 728. Thus, a company’s secretary who has delegated disbursal authority to another officer may be held liable under section 6672.
 
 Thomsen,
 
 887 F.2d at 17. Similarly, a corporate president who relies on others for routine calculation and payment of taxes may also be held liable.
 
 Gustin,
 
 876 F.2d at 491.
 

 Our conclusion is bolstered by Charlton’s own admission. As noted above, Charlton does not appeal the lower courts’ findings that his failure to remit the taxes was willful. Willfulness generally refers to the intentional violation of a known legal duty,
 
 Cheek v. United States,
 
 498 U.S. 192, 201, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991), and it is normally established in cases arising under section 6672 by “evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States.”
 
 Gustin,
 
 876 F.2d at 492. One cannot willfully refuse to do that for which one is not responsible. Charlton’s failure to appeal the lower courts’ findings of willfulness is therefore tantamount to an admission that he was under a duty to remit taxes to the IRS.
 

 Our decision in this appeal is not made without reservation. In finding that Charl-
 
 *241
 
 ton was responsible, the lower courts relied in part on Charlton’s having voluntarily undertaken to make payments to the IRS. In examining the sufficiency of the evidence, we, too, considered Charlton’s payments relevant. Such reliance on voluntary acceptance of responsibility has the potential for working injustice, and it could provide perverse incentives to individuals in Charlton’s position. One who is under no legal duty to act should not be punished for undertaking to do so.
 

 These dangers are greatly diminished, however, where other evidence is more than sufficient to support a finding of responsibility. One who clearly is under a duty to act may properly be held accountable for acting in a belated and desultory manner. Here, we believe that the other evidence established Charlton’s responsibility, and his voluntary act serves merely to corroborate our finding. Accordingly, under the circumstances of this appeal, we do not deem it inappropriate to consider the voluntary act of payment.
 

 Ill
 

 For the foregoing reasons, the judgment of the district court is Affirmed.
 

 [1]
 

 . The West Allis restaurant is sometimes referred to in the record as the Tyrolean restaurant.
 

 [2]
 

 . Although the record is somewhat unclear, Charlton may have made this payment out of personal funds.