In re Paul E. ABEL, Debtor.

Paul E. ABEL, Appellant,

v.

UNITED STATES of America, Appellee.

Civil A. No. 94–7199.

United States District Court,
E.D. Pennsylvania.

Sept. 3, 1996.

Michael P. Forbes, Norristown, PA, for Paul E. Abel.

Edward Sparkman, Chapter 13 Trustee, Philadelphia, PA, pro se.

Frederic Baker, Assistant U.S. Trustee, Philadelphia, PA, pro se.

### *MEMORANDUM*

DuBOIS, District Judge.

This case is before the Court on an appeal from a January 5, 1994 bankruptcy court order allowing a proof of claim by the Internal Revenue Service ("IRS") against the estate of the Appellant, Paul Abel ("debtor"), for unpaid federal withholding taxes.[1] For the reasons discussed below, the bankruptcy court's order will be reversed.

### I. BACKGROUND

This case arises from the failure of Joseph J. Abel & Sons, Inc., a construction company ("the company"), to remit federal payroll withholding taxes for the period ending June 30, 1987 through the period ending September 30, 1988. The debtor was the secretary and fifty percent owner of the company from 1983 until September of 1988, when he resigned after learning of the unpaid taxes.

The debtor's brother, David Abel, was president and also fifty percent owner of the company. The debtor was primarily responsible for overseeing "on-site" work that took place outside of the office, such as supervising construction workers and conducting inspections. The debtor's brother handled the day-to-day business operations of the company.

On May 15, 1992, the debtor filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code (the "Code"). The IRS filed a proof of claim against the estate claiming that under 26 U.S.C. § 6672, the debtor was liable for $113,825.43 in withholding taxes that the company never paid over to the United States government. In his petition, the debtor requested that the bankruptcy court disallow the IRS' proof of claim.

The bankruptcy court held a hearing on November 29, 1993, at which both the debtor and his brother testified. By order and memorandum dated January 5, 1995, the bankruptcy court allowed the IRS' proof of claim. This appeal followed.

Three issues are before the Court: 1) whether the IRS or the debtor has the burden of proof, 2) whether the debtor was a "responsible party" under 26 U.S.C. § 6672, and if so, 3) whether his failure to pay withholding taxes was "willful" under U.S.C. § 6672.

### II. JURISDICTION

■ This court has jurisdiction over appeals from final judgments, orders, and decrees of the bankruptcy court. 28 U.S.C. § 158. Orders allowing or disallowing proofs of claim in bankruptcy are final. *See, e.g., In re Allegheny Int'l, Inc.,* 954 F.2d 167, 172 (3d Cir.1992); *In re Hunt's Pier Associates,* 162 B.R. 442, 444 (E.D.Pa.1993), *judgment aff'd* 31 F.3d 1171 (3d Cir.1994); therefore this Court has jurisdiction over the appeal from the bankruptcy court's order allowing the IRS' proof of claim.

### III. BURDEN OF PROOF

■ The bankruptcy court held that the IRS has the burden of proof. Reviewing this conclusion of law *de novo, Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 924 (3d Cir.1990), this Court disagrees.

■ In bankruptcy proceedings, the claimant, here the IRS, bears the burden of prov-

---

1. The opinion of the bankruptcy court is reported at *In re Abel,* 162 B.R. 993 (Bank.E.D.Pa.1994).

ing a claim filed under Section 502(a) of the Bankruptcy Code. Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim executed and filed in accordance with the Rules of Bankruptcy Procedure "shall constitute *prima facie* evidence of the validity and amount of the claim." As the Third Circuit has explained:

> ... a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces evidence to negate one or more of the sworn facts of the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.

*In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir.1992) (citations omitted). Although neither Section 502 nor Rule 3001(f) fix the burden of proof, this general rule is long-standing and well-settled. *Collier on Bankruptcy*, ¶ 502.01[3] (15th ed. 1991); *see, e.g., In re Sumner*, 101 F. 224 (E.D.N.Y.1900); *In re Gorgeous Blouse Co., Inc.*, 106 F.Supp. 465 (S.D.N.Y.1952).

■■■ In tax litigation under § 6672 the taxpayer, here the debtor, generally has the burden of proof. *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971); *see also Anastasato v. Commissioner of Internal Revenue*, 794 F.2d 884, 886–887 (3d Cir.1986). Once the IRS has introduced a certified tax assessment, the taxpayer has both the burden of going forward with the evidence, and the burden of persuasion. *Id.* at 1160; see also *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir.1992). This burden of proof is not set by the tax code, but is instead based on a number of important policy considerations. *Id.*

In this case, the IRS filed a proof of claim against the debtor in bankruptcy proceedings seeking to recover unpaid withholding taxes. The Court is thus presented with a conflict between the burden of proof usually applied in bankruptcy cases and that usually applied in tax assessment cases. If the bankruptcy rule applies and the debtor rebuts the prima facie validity of the claim, the burden of persuasion is on the IRS; if the tax rule applies, the debtor must show he is not liable under § 6672 by a preponderance of the evidence.

This general question—which ultimate burden of proof to use when the tax and bankruptcy rules conflict—has split the Courts of Appeals. The Third, Fourth and Seventh Circuits have concluded that the taxpayer has the burden of proof. *Resyn Corp. v. United States*, 851 F.2d 660 (3d Cir.1988); *In re Landbank Equity Corp.*, 973 F.2d 265, 268–272 (4th Cir.1992); *U.S. v. Charlton*, 2 F.3d 237, 239–240 (7th Cir.1993). The Fifth, Eighth, Tenth and Ninth Circuits have reached the opposite conclusion and held that in bankruptcy cases the government bears the ultimate burden of proof. *In re Macfarlane*, 83 F.3d 1041, 1045 (9th Cir.1996); *Matter of Placid Oil Company*, 988 F.2d 554, 557 (5th Cir.1993); *In re Fidelity Holding Co.*, 837 F.2d 696, 698 (5th Cir.1988); *In re Brown*, 82 F.3d 801, 805 (8th Cir.1996); *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir.1992).

In *Resyn* the Third Circuit held that the taxpayer had the burden of proof in a case that arose in bankruptcy. The court explained:

> The burden of proving that the assessment is arbitrary and excessive rests on the taxpayer; if the taxpayer cannot prove that the assessment was arbitrary, it retains the burden of overcoming the presumption in favor of the government that the assessment was not erroneous. However, once the taxpayer has sustained its burden of proving that the assessment is arbitrary and excessive, i.e., that it lacks a rational foundation in fact and is based upon unsupported assertions, the ultimate burden of proving that the assessment is indeed correct is placed on the government.

*Resyn Corp. v. United States*, 851 F.2d 660 (3d Cir.1988).

*Resyn* involved a proof of claim by the IRS for corporate income tax deficiencies that resulted from the debtor's fraudulent diversion of income. *Id.* at 661–662. The records that would have shown the amount of the diverted income and the tax owed "had disappeared without explanation." *Id.* at 662. The IRS computed the income from what records were available, and the debtor protested that the results were arbitrary and excessive. *Id.* at 663. The Third Circuit applied the standard normally used in tax deficiency cases and held that the taxpayer had the burden of proving that the assessment was arbitrary and excessive. *Id.* The opinion does not discuss the burden of proof generally applied in bankruptcy, nor does it hold that the ultimate burden is always on the taxpayer in tax cases that arise in bankruptcy.

The bankruptcy court in this case distinguished *Resyn* on the grounds that *Resyn* was a tax deficiency case, not a claim against a debtor under § 6672 for failure to turn over federal payroll withholding taxes. After noting that *Resyn* did not hold that the burden of proof is always on the taxpayer in bankruptcy cases, and considering the policy reasons at work in the tax and bankruptcy contexts, the bankruptcy court held that the burden should be placed on the IRS when it files a proof of claim in bankruptcy based on § 6672. *See generally, In re Compass Marine Corp.*, 146 B.R. 138, 147 (Bktcy.E.D.Pa.1992); *In re Fidelity America Financial Corp.*, 1990 WL 299418, *4 (Bankr. E.D.Pa.1990); *but see In re Green*, 89 B.R. 466, 474 (Bankr.E.D.Pa.1988).

The bankruptcy court reasoned that *Resyn*, in which the *amount* of a tax assessment was at issue, did not apply in this case, where responsibility for the tax, but not the amount, is at issue. The court looked at two policy reasons behind allocating the burden of proof to the taxpayer—encouraging recordkeeping and putting the burden on the party with the best access to "correct facts and figures"—and concluded that although they made sense in *Resyn*, they did not apply with the same force in this § 6672 case. On

those issues the opinion states that in litigation under § 6672 liability depends on factors which are "primarily resolved by testimonial records," not simply access to records. The bankruptcy court also noted that a "responsible person" under § 6672 may have no obligations relating to bookkeeping whatsoever, *see generally, In re Premo*, 116 B.R. 515, 522 (Bankr.E.D.Mich.1990), whereas in *Resyn* the amount of disputed tax assessment would have been established by the taxpayer's missing records. On these grounds, the bankruptcy court distinguished *Resyn*.

These characteristics of § 6672 cases are not, however, unique to bankruptcy—they are equally true in tax litigation outside of bankruptcy. Out of the bankruptcy context, the Third Circuit has held that the debtor has the burden of proof in § 6672 cases, in part for the very reasons with which the bankruptcy court disagreed: the taxpayer's access to records and to encourage recordkeeping. *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971). Because these reasons apply both in and outside of bankruptcy, this Court concludes that the better approach is to decide whether there is anything unique to *bankruptcy* that suggests that the burden of proof normally applied in § 6672 cases should not apply in this case as well.

The bankruptcy court pointed to three aspects of bankruptcy litigation that suggest that the claimant, not the debtor, should have the burden of proof. First, an objection to a claim may be made by any party in interest, not just the debtor, and other parties may have no better access to records than the IRS. *See e.g., In re Fidelity America Financial Corp.*, 1990 WL 299418, *4 (Bankr. E.D.Pa.1990). In this case, however, it is the debtor who objects, and the dispute is between the IRS, on one the hand, and the debtor/taxpayer, on the other. As between these two parties, under the law of this Circuit, the burden should rest on the debtor/taxpayer. *See In re Rutigliano*, 1995 WL 817956, *8 (Bankr.E.D.Pa.1995).

Second, the bankruptcy court reasoned that the "Bankruptcy Code does not distinguish government claims from claims of private entities" and third, the "IRS should be treated like any other claimant because the

estate is a party at interest, not just the taxpayer." The Ninth Circuit has relied on similar reasons for putting the burden of proof on the government in tax cases:

> The [district] court reasoned that since tax claims already receive a statutory priority over other creditor's claims, 11 U.S.C. § 507(a)(8)(A), relieving the [California Franchise Tax] Board of its burden of proof "would be granting the Board a double benefit not authorized by statute or Ninth Circuit authority."

*In re MacFarlane,* 83 F.3d 1041, 1045 (9th Cir.1996). The court went on to explain that:

> The policy goals of the bankruptcy system are put at risk when one class of creditors is given the benefit of a favorable presumption which has its origins outside of bankruptcy law. *quoting In re Wilhelm,* 173 B.R. 398, 401–402 (Bankr.E.D.Wis. 1994).

*Id.*

■ Although this reasoning supports placing the burden of proof on the IRS in this case, the Court concludes that it does not outweigh the policy considerations that put the burden of proof on the taxpayer outside of bankruptcy litigation. These policy considerations, identified in *Psaty,* include, in addition to those discussed above, the presumptive correctness of the tax assessment[2] and the requirement that the corporate officers explain their failure to perform duties imposed by the law. These considerations, and those other discussed above, have no less force in bankruptcy. *See also In re Landbank Equity Corp.,* 973 F.2d 265, 270 (4th Cir.1992) (reasoning that disputes between taxpayers and the IRS should be resolved in the same manner whether or not they arise in bankruptcy). Moreover, the Third Circuit has rejected in *Resyn,* albeit without discussion, a "bright line rule" like the one adopted by the Ninth Circuit in *MacFarlane* that the government, like all other claimants, should always have the burden of proof in bankruptcy cases. For these reasons, the Court will place the burden of proof on the debtor in this case.

2. In this case the government introduced an assessment into evidence at the hearing before the bankruptcy court.

## IV. LIABILITY UNDER SECTION § 6672

■ The debtor's liability under § 6672 depends on whether the debtor was a responsible person, and on whether he willfully failed to collect, truthfully account for or pay over federal withholding taxes. *Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 924 (3d Cir.1990). The bankruptcy court held both that the debtor was a responsible person and that he acted willfully under § 6672. These two conclusions are ultimate facts; this Court reviews the findings of basic and inferred facts upon which they are based only for clear error. *Id.* This Court exercises plenary review over the bankruptcy court's choice and application of law to these basic and inferred facts. *Id.; United States v. McCombs,* 30 F.3d 310, 317 (2nd Cir.1994); *but see, United States v. Charlton,* 2 F.3d 237 (7th Cir.1993) (reviewing responsible party determination under § 6672 only for clear error); *Rykoff v. United States,* 40 F.3d 305, 307 (9th Cir.1994) (same).

## A. RESPONSIBLE PERSON

■ A responsible person under § 6672 is one "required to collect, truthfully account for, and pay over any tax imposed by this title." 26 U.S.C. § 6672. Responsibility hinges on "status, duty, or authority, not knowledge." *Quattrone,* 895 F.2d at 927. Accordingly, the Court's inquiry centers on whether the employee exercised "significant control" over the corporation's finances. *Id.* The hallmarks of such control include holding a corporate office, owning stock in the corporation, signing (and the ability to sign) checks and tax returns for the corporation, the power to hire and fire employees, and paying other creditors in lieu of the United States. *Brounstein,* 979 F.2d 952, 954–955 (3d Cir.1992) (listing these and other factors); *see also, U.S. v. Carrigan,* 31 F.3d 130 (3d Cir.1994).

■ In this case, the uncontested facts show that the debtor was a fifty percent

owner and secretary of the company. He could and did sign checks for the company with no co-signature, he made hiring and firing decisions regarding construction workers with his brother, the only other owner of the company, and he signed a personal guaranty for the debts of the company.

The debtor's primary responsibilities, however, were outside of the office, and included supervising construction sites, making estimates, and conducting inspections. The debtor's uncontroverted testimony was that he came into the office as infrequently as once a month. Transcript of Hearing of November, 29, 1993 ("Transcript"), at 8, 55. The parties agreed that the debtor's duties never included the payment of salaries, or the payment of obligations related to payroll, including taxes the payment of payroll taxes. The debtor did not prepare tax returns. To the extent that the debtor signed checks, he did so for expenses that arose out of the office, such as on-site deliveries.

■ A person has "significant control" and is a responsible party if she has "final or significant say over which bills and creditors get paid." *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir.1994). The bankruptcy court found that the debtor's power to write checks without a cosignature, and his exercise of that authority to pay on-site creditors, meant that he had significant say over the payment of bills and creditors. This conclusion is bolstered by the debtor's position as secretary and fifty percent owner of the company, by his personal guarantee of its obligations to its lender, and by his control over the hiring and firing of employees.

■ The debtor argues that he did not have the requisite authority for § 6672 liability because he did not have final word over who got paid, or "final authority" over the

company's financial affairs.[3] In this Circuit, however, neither final word over the payment of creditors nor over the company's financial affairs is necessary for § 6672 liability; all that is necessary is "significant control" over the corporation's financial affairs. *Quattrone*, 895 F.2d at 927; *Brounstein*, 979 F.2d at 955.

The debtor also maintains that for the company to run effectively, the debtor needed to have the ability to pay on-site creditors, although his primary responsibility in the company was not financial. The debtor's primary role as "operations man in the field," without financial duties in the office, does weigh against finding him responsible under § 6672. But this Court agrees with the bankruptcy court that his control over the finances of the company, even if exercised primarily from outside the office, were "significant."

The record shows that the checks written by the debtor were often for substantial amounts of money, including one for $10,000 and another for $4,725. Government's Exhibit 7, Certificate of Appeal. No co-signature was needed, and although the debtor testified that he called the office to make certain the checks would clear, he nonetheless had the authority to write them, and the " 'effective power' to pay taxes." *In re Abel*, 162 B.R. at 1001. This control over the payment of creditors, in light of the debtor's fifty percent ownership of the company, his control over hiring and firing, and his conversations with his brother about the company, was "substantial" and make him a responsible party under § 6672. It also distinguishes this case from *In re Brady*, 110 B.R. 16, 19 (Bankr.D.Nev.1990), in which the debtor had no power to write checks without a co-signor and did not control which creditors got paid, and *In re Premo*, 116 B.R. 515, 530 (Bankr.

---

3. The Debtor also argues that in the phrase "status, duty and authority," for which he provides a citation to *Quattrone*, 895 F.2d at 927, we must emphasize the *and*. The Debtor claims that he did not have the corporate duty to pay the taxes, and thus he did not have the status, duty *and* authority to pay the taxes, and he is accordingly not liable. This argument is based on an incorrect reference. *Quattrone* states only that "[r]esponsibility is a matter of status, duty *or* authority." 895 F.2d at 927 (emphasis supplied); *See*

also, *Greenberg*, 46 F.3d at 243 (using "or"). Moreover, as the bankruptcy court observed, the Supreme Court has held that the § 6672, which provides that a responsible person is one who is required to "collect, truthfully account for or pay over" any tax, does not limit liability to those who are responsible for all three duties but instead includes those responsible for any one of the three duties. *Slodov v. United States*, 436 U.S. 238, 250, 98 S.Ct. 1778, 1786–1787, 56 L.Ed.2d 251 (1978).

E.D.Mich.1990), in which the debtor had the authority to control corporate payments but apparently did not exercise it.

The Third Circuit's opinion in *United States v. Carrigan,* 31 F.3d 130 (3d Cir.1994) does not alter this conclusion. In *Carrigan* the court reversed a grant of summary judgment which upheld an assessment by the IRS under § 6672. The defendant, the president of the company, had signature authority on payroll and other accounts, had signed one check to the IRS, and had loaned the company $20,000 to pay creditors. *Id.* at 132–133. The court could not conclude, however, as a matter of law, that defendant had "significant control" over the finances, because other corporate officers were responsible for financial affairs of the company, the defendant owned no stock in the company, had no authority to hire and fire employees without approval by the Chairman of the Board, never negotiated with creditors, never prepared or signed tax returns, and he had no uncontrolled access to corporate records and checkbooks. *Id.* at 133–134. The United States was accordingly not entitled to summary judgment, since there was some evidence that the taxpayer was not a responsible party.

Like the defendant in *Carrigan,* the debtor in this case was not responsible for handling the general financial affairs of the corporation. The debtor here, however, as fifty percent owner with only one co-owner of the company, and with the partial authority to fire and hire employees, had greater control over the company as a whole than did the defendant in *Carrigan.* More importantly, the debtor had greater direct control over the finances and payment of bills. The debtor wrote checks and paid creditors with greater frequency.[4] Although he only did so for bills that required payment outside of the office, these bills were substantial. His contact with these creditors suggests that he had the authority to discuss or negotiate payment with them, in addition to the authority to write checks. Finally, unlike the defendant in *Carrigan,* the debtor had uncontrolled access to the corporate checking account, and all the corporate records.

The bankruptcy court's findings of fact are supported by the evidence. This Court concludes that the debtor did not meet his burden of proving that he was not a responsible person under § 6672.

## B. WILFULNESS

A responsible person under § 6672 is only liable if his failure to collect, account for, or pay over the withholding tax was "wilful." Although "wilful" generally denotes a voluntary, conscious, and intentional decision, a responsible person may act wilfully under § 6672 if he pays other creditors "with reckless disregard for whether the taxes have been paid." *Quattrone,* 895 F.2d at 927. A taxpayer acts with reckless disregard if the taxpayer "(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily." *United States v. Vespe,* 868 F.2d 1328, 1335 (3d Cir.1989), *quoting Wright v. United States,* 809 F.2d 425, 427 (7th Cir.1987); *see also U.S. v. Carrigan,* 31 F.3d 130, 134 (3d Cir.1994) (applying the same test).

Applying this standard, the bankruptcy court found that until the debtor resigned in September of 1988, he did not have actual knowledge that the withholding taxes were unpaid.[5] His actions nonetheless constituted "reckless disregard" for whether the taxes had been paid, the bankruptcy court concluded, because 1) the debtor paid other creditors and 2) was aware that the company had financial problems, 3) but he did not investigate whether the taxes had been paid 4) although he had access to the company's books and records.

---

4. The government introduced into evidence copies of seventeen checks signed by Paul Abel between May, 1987 and September, 1988. Government Exhibit 7, Supplemental Certificate of Appeal, item 5. In *Carrigan,* the debtor signed "one check on behalf of the company." 31 F.2d at 134.

5. The Debtor first testified at trial that he knew of the failure pay the withholding taxes in June of 1988. He then corrected that testimony and stated that he first learned of the failure in September of 1988. The bankruptcy court found that his second statement was credible, and that he did not know until September of 1988. This finding is supported by the record and is thus not clearly erroneous.

The record supports these factual findings but this Court does not agree that they demonstrate "wilfulness" in this case. Although wilfulness under § 6672 includes recklessness, it does not include simple negligence. *Sadowski v. United States,* 687 F.Supp. 966, 975 (E.D.Pa.1988); *Kalb v. United States,* 505 F.2d 506, 511 (2d Cir. 1974); *Wright v. United States,* 809 F.2d 425, 427 (7th Cir.1987) (holding gross negligence is enough). The debtor here may have been negligent, but for the reasons discussed below, he sustained his burden of demonstrating that he did not act recklessly.

First, the debtor was not involved in preparing tax returns, nor did he exercise primary authority over writing checks and paying bills, except for those arising outside of the office. The debtor and the debtor's brother, who testified for the government, stated that the debtor was not responsible for preparing corporate tax returns, either for income or payroll taxes. There is no evidence to the contrary. Although there was evidence that the debtor purportedly signed one tax return, the bankruptcy court concluded that the testimony of the debtor and his brother established that it was not the debtor's signature. The debtor also testified that he was busy with his obligations out of the office, and that he did not return to the office "but once a month." Transcript at 8. The debtor's brother did not controvert this testimony, but stated "[t]hat's possible, yes, if he wasn't doing a job out in our direction." *Id.* at 55.

*Brounstein* illustrates how involvement in bookkeeping and checkwriting can operate to make the taxpayer reckless, even where the taxpayer did not have much day to day responsibility for or control over the company's finances. 979 F.2d at 955. The *Brounstein* court found that the taxpayer, although he did not exercise day to day control over the finances and acted at the direction of someone else, nonetheless "at the very least acted with reckless disregard as to whether [the taxes] had been paid" because the taxpayer knew that quarterly taxes were due when he signed the quarterly tax returns, and he signed virtually all the checks for the corporation (approximately three hundred checks to creditors) without signing any made payable to the IRS. *Id.* at 955–956.

In this case, however, in addition to not having day to day control over the finances, the debtor signed only a few checks to creditors, and did not sign or prepare tax returns. These differences are important because the greater control and responsibility one has over the taxes and finances of company, and over the payment of creditors, the sooner one "clearly ought to have known" of the risk that withholding taxes were not paid. In some situations where the taxpayer had greater immediate control over and responsibility for a company's finances, bookkeeping, or check writing, knowledge that the company has financial difficulties could be sufficient to establish recklessness with respect to nonpayment of taxes, but that is not true in this case.

Second, there is no evidence that the debtor had knowledge of past tax problems, or any other reason to suspect that his company's taxes might not be paid by his brother in times of financial distress. If a taxpayer has knowledge of past tax problems, or has reason to believe that the person in charge of paying the taxes is not trustworthy, his actions rise to the level of recklessness more quickly when the company experiences financial problems, or other warning signs arise that suggest unpaid tax liability. *See, e.g., Vespe,* 868 F.2d at 1335 (wilfulness based in part on knowledge of subsequent tax problems which should have suggested possible problems with payment in past tax quarters); *Wright,* 809 F.2d at 427 (finding wilfulness based in part on knowledge of past tax problems); *Keller v. United States,* 46 F.3d 851, 855 (8th Cir.1995) (holding that past tax problems should have alerted responsible person who did not have day to day control over finances that future taxes might go unpaid); *Malloy v. United States,* 17 F.3d 329 (11th Cir.1994) (holding that taxpayer disregarded obvious risk of non-payment where he was aware of prior failure to pay taxes and knew the company was having financial difficulties and the same person was responsible for paying the taxes.).

In this case, however, there is no evidence suggesting that debtor was aware of any past tax problems, or any other evidence that would have suggested to the debtor that his

brother would not pay over the withholding taxes. To meet that lack of evidence the government argues that the debtor's failure to pay the taxes upon learning of the delinquency in September of 1988 constituted wilfulness for the entire period in which taxes were paid. Had the debtor remained with the company after learning of the tax delinquencies, and failed to pay the taxes from previous quarters, his actions might be considered wilful as to all the unpaid taxes. *Honey v. United States,* 963 F.2d 1083, 1089 (8th Cir.1992); *Vespe,* 868 F.2d at 1334. The bankruptcy court found in this case, however, that the debtor resigned shortly after learning that the tax had not been paid. 162 B.R. at 1003. *See Turpin v. United States,* 970 F.2d 1344, 1349 (4th Cir.1992) (holding that a finding of wilfulness is not appropriate where upon learning of unpaid taxes the taxpayer conducts himself in a manner inconsistent with a prior willful failure to pay over taxes.)

These two factors—the debtor's little immediate responsibility for finances and taxes, and his lack of knowledge of past or present tax deficiencies, or other indications that the tax went unpaid—taken together, distinguish this case from those in which responsible parties without knowledge that withholding taxes were not paid, are nonetheless found "wilful" under § 6672. In *Vespe,* for example, the evidence suggested that taxpayer generally approved which creditors got paid, and became aware of unpaid taxes, but stayed with the company and did not investigate whether earlier tax obligations had been met. 868 F.2d at 1332–1333, 1335.

*Wright v. United States,* 809 F.2d 425 (7th Cir.1987), another case upon which the bankruptcy court relied, is very similar to this case in several ways, but dissimilar in a way that distinguishes it as authority. The taxpayer, in *Wright,* like the debtor here, did not review the books, had primary responsibilities in the corporation that were not financial, but did write some checks, was a corporate officer, and knew that the company had financial troubles. *Id.* at 426–427.

In *Wright,* however, the taxpayer also knew that company "had a history of not paying withholding taxes" and that the same person who was responsible for the earlier violations "continued to be a principal of the company." *Id.* It was this knowledge of past delinquency, *not* just the knowledge that the company had financial troubles, that led the court in *Wright* to conclude that the taxpayer's failure to investigate whether the taxes had been paid was reckless. *Id.* at 427. *See, Harris Bank v. American National Bank & Trust Co.,* 1991 WL 331316 (N.D.Ill. 1991) (distinguishing *Wright* in a case where the company had no history of tax delinquency). *Wright* does not suggest that, even in a small company, financial difficulties alone automatically trigger a duty to investigate whether taxes have been paid.

The Court also finds *United States v. Running,* 7 F.3d 1293 (7th Cir.1993) instructive. In that case the taxpayer was an officer and then, apparently during the time taxes went unpaid, a consultant to the company, had the authority to approve large purchases, was partly in charge of overseeing the company's accounting operations, and participated in some decisions regarding payment of creditors. The appellate court did not disturb the district court's finding that the taxpayer was a responsible party. *Id.* at 1298.

But, applying the same test used by the Third Circuit in *Quattrone,* 895 F.2d at 927, the court in *Running* found that the taxpayer did not act willfully. The taxpayer there did not have actual knowledge of the unpaid taxes, and he did not sign or prepare tax returns. 7 F.3d at 1299. Unlike the debtor in this case, he argued that he was not in a position to find out for certain whether employment tax deposits were made; also unlike this case, he admitted that he was aware of the risk that employment taxes might go unpaid. Like the debtor in this case, he also knew that the company had financial problems. This was not enough, the court held, to show that he was reckless:

> The government makes much of Running's admission that he was aware of Bethel's financial problems while employed by Good Shepard, *but knowledge of financial distress, without more, does not equate to knowledge that the facility was not meeting its tax obligations. Id.* (emphasis supplied).

The court went on to state that it was "unable to conclude that Running ought to have known that Bethel was not paying withholding taxes and therefore acted willfully." *Id.* at 1300.

This Court is similarly unable to conclude that the debtor here "ought to have known" that the withholding taxes were not paid simply because the company experienced financial problems. Although the bankruptcy court found that debtor was in a position to easily determine whether or not the taxes had been paid, the Court does not agree that this constitutes recklessness where, as here, the debtor had no reason, other than the financial troubles of the company, to suspect that the taxes were unpaid and to investigate the matter. The Court therefore concludes that the debtor has sustained his burden or proving that he did not act willfully, and that he is not liable for the unpaid withholding taxes under § 6672.[6]

## IV. CONCLUSION

For the foregoing reasons, the bankruptcy court's order allowing the IRS' proof of claim will be reversed.

---

**6.** The bankruptcy court concluded that the Debtor was not liable for any unpaid taxes after his resignation from the Company. This result is, of course, not altered by this Memorandum or the attached Order.