UNITED STATES of America
(INTERNAL REVENUE
SERVICE), Appellant,

v.

BASKIN & SEARS, P.C.,
et al., Appellees.

Civil Action No. 96–CV–7301.

United States District Court,
E.D. Pennsylvania.

March 14, 1997.

Paul J. Winterhalter, Di Donato and Winterhalter, P.C., Philadelphia, PA, for Baskin & Sears, P.C., et al.

Charles M. Flesch, Edward J. Snyder, Tax Division of U.S. Dept. of Justice, Washington, DC, Ina S. Weiner, Philadelphia, PA, for U.S. (I.R.S.).

Charles M. Golden, Obermayer, Rebmann, Maxwell and Hippel, Philadelphia, PA, for Unsecured Creditors Committee.

Frederic J. Baker, Asst. U.S. Trustee, Philadelphia, PA.

## MEMORANDUM

JAMES McGIRR KELLY, District Judge.

This case is before the Court on an appeal from a September 19, 1996 bankruptcy court final order adjudicating the objections of Baskin and Sears, P.C. ("debtor") and the Official Unsecured Creditor's Committee to a proof of claim by the Internal Revenue Service ("IRS"). At issue in this appeal is the appropriate burden of proof on a tax deficiency claim in bankruptcy, as well as factual issues related to the application of the proper burden of proof by the bankruptcy judge.

## I. Background

The debtor in this case was a law firm that had its principal offices in Philadelphia, Pennsylvania.[1] Due in large part to financial difficulties and managerial differences, the firm ceased doing business on August 15, 1990. Although the firm had planned to liquidate following the ceasing of operations, the firm's creditors and some of its shareholders filed an involuntary bankruptcy petition under Chapter 7 of the Bankruptcy Code ("Code"). In November of 1990 the debtor converted the involuntary petition into a proceeding under Chapter 11 of the Code.

In February of 1991, after the bankruptcy proceeding had commenced, the building that contained the debtor's Philadelphia offices caught fire. Although the fire did not reach the floor where the debtor's offices were located, much of the debtor's records were damaged by water used to extinguish the fire. Restoration efforts were able to recover over 80% of the debtor's records.

The debtor filed a reorganization plan that was confirmed by the bankruptcy court in May of 1993. The IRS filed a proof of claim asserting that the debtor had an income tax liability relating to tax year 1988. The debtor objected to the IRS' computation of the 1988 income taxes, and also motioned for a determination of tax liability and possible refund for tax year 1990 under § 505(b) of the Code. The debtor's disagreement over the 1988 income taxes was premised on the loss carry back adjustment provision, 26 U.S.C. § 162, which would allow the debtor to carry back to 1988 a net loss the debtor had calculated for tax year 1990. The IRS disagreed, both with an adjustment of the 1988 taxes and with the debtor's determination of a net loss occurring in tax year 1990.

The debtor's first attempt to file an income return for tax year 1990 resulted in a reported net loss of $1,484,544. In preparing this return, however, the debtor did not employ accurate records, as stated by the bankruptcy court, "due to poor record keeping, at least in the last months of the debtor's prepetition existence, and [due to] the substantial damage caused by the ... fire."

On July 19, 1995, the bankruptcy court commenced a proceeding to resolve the debtor's objection to the IRS' proof of claim and the debtor's motion for determination of tax liability and possible refund for tax year 1990. See 28 U.S.C. § 157(b)(2)(B). The trial was not completed, and after two days of testimony the court issued an order rescheduling the remainder of the trial for September of 1995. The court also directed the debtor to amend its 1990 return using the IRS' method of arriving at income and expenses. The debtor did so in August of 1995,

---

1. Debtor law firm has in fact practiced under five different names, originally had its greatest presence in Pittsburgh, Pennsylvania and had offices in several cities including, at one time, Washington D.C. The claimed expenses at issue in this appeal arose following the defection of debtor's Washington D.C. office and in part involved another Washington D.C. firm which was approached as a potential merger partner.

submitting a Modified Analysis ("Amended Return") of its 1990 tax return.

The parties requested a continuance of the September trial and in November of 1995, the parties informed the court that discovery was still on-going. Late in December of 1995 the IRS filed a response to the debtor's Amended Return. Based upon the IRS' analysis, the debtor still did not have a net loss for tax year 1990, but rather a tax deficiency amounting to $582,880 plus penalties. In February of 1996, the IRS submitted a list of six issues that remained contested in the trial before the bankruptcy court. The IRS' list included whether the defendant should be allowed certain deductions for tax year 1990, including deductions for a Washington, D.C. office the debtor claimed was part of the law firm, and deductions for prepaid medical and malpractice insurance.

The bankruptcy court held the second portion of the trial in March of 1996. In a Memorandum Opinion issued July 2, 1996, and a Final Order issued September 19, 1996, the bankruptcy court held that the debtor was entitled to take the deductions for the Washington, D.C. office and for prepaid health and malpractice insurance. The court found that in tax year 1990 the debtor had a net operating loss that resulted in a tax overpayment. In addition, the 1990 net loss could be carried back to tax year 1988, resulting in a tax refund for that year. An appeal by the IRS followed.

Three issues are before the Court: (1) whether the bankruptcy court erred in placing on the IRS the burden of establishing that the debtor's deductions should be disallowed, (2) whether the debtor was entitled to deduct expenses related to the Washington, D.C. office, and (3) whether the debtor was entitled to deduct expenses relating to prepaid health and malpractice insurance.

## II. Jurisdiction and Standard of Review

This court has jurisdiction over appeals from final judgements, orders and decrees from the bankruptcy court. 28 U.S.C. § 158. In an appeal from an order of the bankruptcy court, the district court conducts plenary review of legal conclusions and applies the clearly erroneous standard to factual find-

ings. *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991).

## III. Burden of Proof

On July 2, 1996, the bankruptcy court in this case issued a Memorandum Opinion in which it addressed the six disputed areas identified by the IRS. The bankruptcy court did not discuss or set forth the appropriate burden of proof on a tax deficiency claim in a bankruptcy setting. In the course of the opinion, however, the bankruptcy judge appears to explicitly place on the IRS the burden of establishing that certain of the debtor's expenses were not deductible. Both the IRS and the debtor agree that the bankruptcy judge used the traditional bankruptcy standard. They disagree as to whether the standard used by the bankruptcy judge was appropriate.

■■■ In bankruptcy proceedings, proofs of claim are deemed allowed unless a party in interest objects. 11 U.S.C. § 501 (1996). If a party in interest files an objection to a proof of claim pursuant to 11 U.S.C. § 502(a), the burden of establishing the validity of the proof of claim is placed on different parties at different times. The claimant must first come forward and allege facts sufficient to support the claim. Thereafter, in traditional bankruptcy cases, debtors have the burden of production to demonstrate that the proof of claim is invalid with at least as much evidence as produced by the claimant. If the debtor meets its burden of production, the burden shifts back to the claimant to demonstrate the validity of its proof of claim. *In Re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992). As in non-bankruptcy law, bankruptcy claimants seeking damages must prove their entitlement.

■■■ On the other hand, taxpayers claiming deductions on their tax returns bear "the burden of clearly showing the right to the claimed deduction." *INDOPCO v. Commissioner*, 503 U.S. 79, 84, 112 S.Ct. 1039, 1043, 117 L.Ed.2d 226 (1992). Tax deductions are a "matter of legislative grace," and as such, are only allowed after a clear showing of entitlement. *Id.* This rule applies even if the records substantiating the deduc-

tion are unintentionally lost. *Andrew Crispo Gallery, Inc. v. Commissioner,* 16 F.3d 1336 (2nd Cir.1994). Initially, a taxpayer bears the burden of proving that the assessment is "arbitrary and excessive" in order to require the IRS to prove that the assessment was correct. Otherwise, the taxpayer must overcome the presumption in favor of the government that a tax assessment was not erroneous. *Resyn Corp. v. U.S.,* 851 F.2d 660, 663 (3d Cir.1988).

■ In *Resyn,* the Third Circuit held that in bankruptcy a deficiency assessment by the IRS "is afforded a presumption of correctness, thus placing the burden of producing evidence to rebut that presumption on the taxpayer." 851 F.2d at 662–63. While the competing burdens of proof associated with tax deficiency claims in bankruptcy were not addressed, the *Resyn* holding makes it clear that the ultimate burden in this matter is upon the taxpayer.[2] This conclusion was reached in this district when the issue of the proper burden was before the Court. *In re Abel,* 200 B.R. 816, 819 (E.D.Pa.1996).

Policies favoring use of the traditional tax burden in bankruptcy include encouraging accurate taxpayer record keeping, putting the burden on the party with the best access to the information, and giving weight to the presumptive correctness of assessments by the IRS. *Id.* at 820–21. These policy considerations outweigh other considerations that would place the burden on the IRS inside of the bankruptcy setting. *See also In re Rutigliano,* 1995 WL 817956, *8 (Bankr. E.D.Pa.1995) (placing the burden on the taxpayer and examining policy consideration outside of bankruptcy). *Cf. In re Compass Marine Corp.,* 146 B.R. 138 (Bankr.E.D.Pa. 1992) (addressing policy consideration, but placing burden on IRS because debtor-taxpayer had overcome presumption of IRS' claim validity). Other policy considerations that favor placing the burden upon the tax-

payer-debtor include the presumptive correctness of tax assessments and the essential importance of funding the federal government.

■ Throughout the Memorandum Opinion, the bankruptcy judge states that the IRS has failed to meet its burden on various claims. Specifically, referring to expenses claimed by debtors to be associated with the Washington D.C. office, "[t]he IRS did not establish that the $264,809.74 shown on the general ledger should not be deducted." *Baskin & Sears v. IRS,* No. 90–14266BIF, slip op. at 8, (Bankr.E.D.Pa. July 2, 1996). As to a November 11, 1990 interbank transfer of $29,000 characterized by the IRS as income and debtor as a transfer correction, the bankruptcy judge found "the debtor's explanation more convincing." *Id.* at 11. The bankruptcy court found "the debtor's explanation convincing" as to deposits claimed by the debtor to be reimbursements for payroll expenses for the proposed Washington D.C. office. *Id.* at 12.

The debtor's general ledger for 1990 was out of balance by $178,632.76. The bankruptcy court required the IRS to establish a "convincing and logical foundation" for its proposal to reduce debtor's allowable expenses by this amount. *Id.* at 14–15. This determination squarely placed the burden on the IRS to establish entitlement to taxes upon this amount and absolved debtor of its burden to establish its entitlement to a deduction. In another place of the opinion, the bankruptcy court stated that "[t]he IRS ha[d] not proven its objection," referring to debtor's claimed loss resulting from capital improvements to leased offices. *Id.* at 21.

In all of these instances it appears, and the IRS and debtor believe, that the bankruptcy court placed an affirmative burden of proving its claim upon the IRS. Since the bankruptcy court did not address the proper burden of proof, it is at least unclear what burden of

---

**2.** Their is a split among the circuits concerning where the burden of persuasion lies when the IRS is a claimant in bankruptcy. The Fourth and Seventh Circuits agree with the Third Circuit. *See In re Landbank Equity Corp.,* 973 F.2d 265 (4th Cir.1992); *U.S. v. Charlton,* 2 F.3d 237 (7th Cir.1993). However, the Fifth, Eighth, Ninth and Tenth Circuits have come to an oppo-

site result, holding that in bankruptcy cases the ultimate burden of proof rests with the IRS. *See Matter of Placid Oil Co.,* 988 F.2d 554 (5th Cir. 1993); *In re Brown,* 82 F.3d 801 (8th Cir.1996); *In re Macfarlane,* 83 F.3d 1041 (9th Cir.1996); *In re Fullmer,* 962 F.2d 1463 (10th Cir.1992). This Court is, of course, constrained to follow the Third Circuit holding in *Resyn.*

proof the bankruptcy court utilized. It is conceivable that the bankruptcy judge applied the standard set forth in *Resyn* and inartfully articulated the standard applied in the Memorandum Order. It is also conceivable that application of the proper standard will result in an identical outcome. In any event, the appropriate course upon this appeal is to vacate the Final Order of the bankruptcy court and remand this matter to allow the bankruptcy court to apply the proper burden of proof as set forth in *Resyn* or to address those areas in the Memorandum Opinion where the bankruptcy court appears to have applied an improper burden of proof. Since the factual issues asserted by the IRS are dependent upon the burden of proof employed by the bankruptcy court, this Court shall not address those factual issues as the IRS' appeal may be resolved by application of the proper burden of proof.