In re Gary N. BERARDI, Debtor.

Gary N. Berardi, Plaintiff,

v.

United States of America, Internal Revenue Service, Defendant.

Bankruptcy No. 99–23846T.
Adversary No. 00–2078.

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 22, 2002.

David F. Dunn, Allentown, PA, for Plaintiff.

Pat S. Genis, Civil Trial Section, Eastern Region, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## OPINION

THOMAS M. TWARDOWSKI,
Bankruptcy Judge.

Before the court is Debtor/Plaintiff's ("Plaintiff") complaint seeking declaratory relief to reduce his federal tax liability for the 1995 calendar year and his objection to the proof of claim filed by the Internal Revenue Service ("Defendant") in the main bankruptcy case. This court heard both matters on a consolidated record.[1] We now enter judgment in favor of Defendant on the complaint and we overrule Plaintiff's objection to Defendant's proof of claim finding that Plaintiff in fact has a federal income tax deficiency for the 1995 tax year in the amount of $24,079.00, that Defendant is entitled to impose both a failure to file penalty against Plaintiff un-

der 26 U.S.C. § 6651(a)(1) in the amount of $1,204.00 and an accuracy related penalty under 26 U.S.C. § 6662(a) in the amount of $4,816.00 and that Defendant is entitled to interest through April 20, 1998 in the amount of $5,878.00. Our findings of fact and conclusions of law follow.

### FINDINGS OF FACT

1. Plaintiff owned and operated the Custom Lawn & Tree Service ("Custom Lawn") in Fogelsville, PA during the 1995 tax year.

2. Plaintiff's income tax return for the 1995 tax year was due on extension by October 15, 1996. *See* Defendant's Exhibit A.

3. Plaintiff filed his 1995 United States individual income tax return (Form 1040) on November 4, 1996 reporting gross receipts (income) of $158,762.00 and expenses in the amount of $137,770.00. *See* Defendant's Exhibit A.

4. Plaintiff utilized the standard deduction rather than itemize his personal expenses on his 1995 income tax return. *See* Defendant's Exhibit A, Form 1040, line 34.

5. Defendant conducted an examination of Plaintiff in 1998 and determined that Plaintiff had income of $208,061.00 in the 1995 tax year which is $49,299.00 more than he reported on his 1995 federal income tax return. This excess income consisted of $14,399.00 in excess checking account deposits and cash used to purchase $23,400.00 in gambling chips from the Claridge Casino Hotel ("Claridge") on June 17, 1995 and $11,500.00 in gambling chips from the Trump Taj Mahal Casino Resort ("Taj Mahal") on June 22, 1995.[2]

---

1. Although we declined to formally consolidate the within adversary matter and contested matter, we directed the parties to submit evidence at one hearing/trial for purposes of judicial economy.

2. Defendant did not include the $12,000.00 of verified gambling debt that Plaintiff paid to various casinos in the 1995 tax year as unreported income. N.T. at 57–58.

These purchases are reflected on Currency Transaction Reports ("CTR") which the Claridge and the Taj Mahal filed with Defendant. *See* Defendant's Exhibits B, E; Notes of Testimony, November 15, 2000 trial ("N.T.") at 51–52, 55–57, 94.

6. Defendant also determined that Plaintiff's expenses for the 1995 tax year totaled $113,769.00 which is $24,001.00 less than Plaintiff reported on his 1995 federal income tax return. N.T. at 52–53.

7. As a result of these discrepancies, Defendant determined that Plaintiff had underpaid his 1995 federal income tax in the amount of $24,079.00. *See* Defendant's Exhibit B.

8. On August 11, 1998, Defendant sent Plaintiff a notice of deficiency which notified Plaintiff of Defendant's intent to assess a tax deficiency of $24,079.00 for the 1995 tax year, a failure to file penalty under 26 U.S.C. § 6651(a)(1) in the amount of $1024.00 due to the fact that Plaintiff filed his 1995 income tax return late, an accuracy related penalty under 26 U.S.C. § 6662(a) of $4,816.00 for Plaintiff's underpayment of taxes for the 1995 tax year and interest to April 20, 1998 in the amount of $5,878.00. *See* Defendant's Exhibit B.

9. Thereafter, Plaintiff filed a petition in the United States Tax Court challenging the proposed assessment. However, the Tax Court litigation was stayed by Plaintiff's filing of this chapter 13 bankruptcy petition on September 8, 1999.

10. Plaintiff and his wife, Anabela Berardi, testified that they went to Atlantic City on Father's Day weekend in June of 1995 with $500.00 and left early the next morning with enough money for tolls and a meal at McDonalds. N.T. at 44, 45.

11. Plaintiff admits and we find as a fact that Plaintiff purchased over $30,000.00 worth of gambling chips from casinos on the days in question. N.T. at 44.

12. Plaintiff testified that "the money that was used to purchase those chips were derived from a conglomeration of markers drawn, and winnings earned, whereas all of the chips were converted into cash and then the cash ... again bought more gaming chips." N.T. at 44–45.

13. Plaintiff testified that he had a maximum line of credit of $3,000.00 with each of the three casinos he visited on Father's Day in June of 1995. N.T. at 13.

14. At the height of his winnings, which was somewhere between 6:00 p.m. and 7:00 p.m. on the first day of his visit over Father's Day weekend in June of 1995, Plaintiff had $19,000.00 in cash and had generated in excess of $30,000.00 to $40,000.00 in gambling action or winnings during the day. N.T. at 16, 20.

15. Plaintiff testified that he never cashed out $10,000.00 or more at any cashier window. N.T. at 17.

16. Alan Mackie, an employee of Defendant who has some expertise in casino records and the procedures used at casinos, testified that based upon the statements Defendant received from the casinos, it appears that Plaintiff presented $23,400.00 in cash to the Claridge on June 17, 1995 to purchase gaming chips and $11,500.00 in cash to the Taj Mahal on June 22, 1995 to purchase gaming chips. While Plaintiff testified that he cashed in chips to obtain the money to purchase the gaming chips, no records were received from the casinos to support this testimony. N.T. at 94–95.

*17.* Monika Drury, a tax auditor employed by Defendant, testified that during her audit of Plaintiff's 1995 income tax return she reviewed all of the documentation Plaintiff provided to her and gave Plaintiff credit for all of the business expenses which were documented. N.T. at 61–63. Specifically, Plaintiff claimed a $14,664.00 depreciation deduction on his 1995 federal income tax return for his vehicles and mowers used in connection with his Custom Lawn business as well as a $20,992.00 deduction from gross receipts as "cost of goods" and both of these deductions were allowed in full by Defendant. Defendant disallowed $24,001.00 of business expenses claimed by Plaintiff on his 1995 federal income tax return because these expenses were not documented.

## CONCLUSIONS OF LAW.

*1.* Section 6201 of the Internal Revenue Code authorizes the Secretary of the Treasury or his designee to assess all taxes including interest and additions to tax imposed by the Internal Revenue Code. 26 U.S.C. § 6201.

■ *2.* A presumption exists in favor of Defendant that the notice of tax deficiency is correct, and therefore, the burden of producing evidence to rebut the presumption is on Plaintiff. As stated by the Third Circuit, "the burden of proving that an assessment is arbitrary and excessive rests on the taxpayer; if the taxpayer cannot prove that the assessment was arbitrary, [he] retains the burden of overcoming the presumption in favor of the government that the assessment was not erroneous." *Resyn Corp. v. United States,* 851 F.2d 660, 662–63 (3rd Cir.1988); *see also Foster v. Commissioner of Internal Revenue,* 391

F.2d 727, 735 (4th Cir.1968); *United States v. Baskin & Sears, P.C.,* 207 B.R. 84, 86–8 (E.D.Pa.1997); *Abel v. United States (In re Abel),* 200 B.R. 816, 819–21 (E.D.Pa. 1996).

*3.* Section 61(a)(1) of the Internal Revenue Code provides that gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a)(1).

■ *4.* Once it is shown that unreported receipts or deposits have the appearance of income, the taxpayer has the burden of convincing the court that the receipts or deposits came from a nontaxable source. *Ruark v. Commissioner of Internal Revenue,* 449 F.2d 311, 312 (9th Cir.1971).

■ *5.* A "court is not bound to accept testimony at face value even when it is uncontroverted if it is improbable, unreasonable or questionable." *Ruark,* 449 F.2d at 312 (*quoting Factor v. Commissioner of Internal Revenue,* 281 F.2d 100, 111 (9th Cir.1960)), *cert. denied,* 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961).

■ *6.* For the reasons that follow, we conclude that Plaintiff failed to meet his burden of overcoming the presumption that he had unreported income in the 1995 tax year in the amount of $49,299.00.

*(A).* Plaintiff provided no evidence or testimony to refute Defendant's determination that he had $14,399.00 in excess deposits to his checking account in the 1995 tax year which deposits were not reported as income.[3] Therefore, this determination must stand.

*(B).* Plaintiff provided no evidence or testimony to refute Defendant's determination that he had unreported income of $11,500.00 in the 1995 tax year which he

---

**3.** Plaintiff maintains that this sum represents loans he received from various casinos. However, Plaintiff failed to introduce any evidence to support this assertion and therefore, we find that Plaintiff failed to overcome the presumption that he had $14,399.00 in unreported income in the 1995 tax year and this determination must stand.

used to purchase gambling chips at the Taj Mahal on June 22, 1995. Therefore, Defendant's determination that Plaintiff had unreported income in the amount of $11,500.00 in the 1995 tax year must stand.

*(C).* Plaintiff admitted that he made a cash purchase of $23,400.00 of gambling chips at the Claridge on June 17, 1995. As required by law, Claridge filed with Defendant a CTR reporting that Plaintiff paid $23,400.00 in cash to buy gambling chips on June 17, 1995. Casinos are legally required to file a CTR "of each transaction in currency, involving either cash in or cash out, of more than $10,000.00." 31 C.F.R. § 103.22(b)(2). Multiple transactions totaling more than $10,000.00 during any gaming day are treated as a single transaction. 31 C.F.R. § 103.22(c). "Cash in" transactions include purchases of chips, payments on any form of credit, including markers and counter checks and bets of currency. 31 C.F.R. § 103.22(b)(2)(i)(A), (D), (E). "Cash out transactions include redemption of chips, advances on any form of credit, including markers, and payment on bets". 31 C.F.R. § 103(b)(2)(ii)(A), (D), (E). Plaintiff failed to introduce evidence to support his claim that the $23,400.00 used to purchase the gambling chips were derived from casino loans. Therefore, Plaintiff failed to meet his burden of overcoming the presumption that Defendant's determination that he had unreported income of $23,400.00 in the 1995 tax year which he used to purchase gambling chips at the Claridge on June 17, 1995 was correct and this determination must stand.

■ 7. Gambling wins constitute gross income which must be reported. *Garner v. United States,* 501 F.2d 228, 232 (9th Cir.1972), *aff'd.,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). A taxpayer is permitted to take a deduction for his gambling losses up to the amount of his winnings. 26 U.S.C. § 165(d); *Garner,*

501 F.2d at 232; *Norgaard v. Commissioner of Internal Revenue,* 939 F.2d 874, 878 (9th Cir.1991)(losses from wagering deductible "to the extent of the gains from such transactions"). However, "a gambler whose losses offset his winnings must nevertheless report all winnings as gross income and losses as deductions." *Garner,* 501 F.2d at 232. In addition, gambling losses must be taken as itemized deductions under section 63(d) of the Internal Revenue Code, 26 U.S.C. § 63(d). *Hochman v. Commissioner of Internal Revenue,* T.C.M. (P–H)1986–24 (U.S. Tax Ct.1986).

■ 8. In the case before us, Plaintiff did not file a Schedule A itemizing his gambling losses as deductions, but instead took the standard deduction on his Form 1040. Moreover, the evidence Plaintiff submitted on his gambling losses was incomplete and inconclusive. Accordingly, Plaintiff may not deduct his gambling losses from his winnings for the 1995 tax year.

*9.* The taxpayer has both the burden of showing that he is entitled to a particular deduction and the duty to maintain records sufficient to establish the amount of the deduction. 26 C.F.R. § 1.6001–1. *See also Norgaard,* 939 F.2d at 877.

*10.* Plaintiff's bald assertion that his Schedule C attached to his Form 1040 reflected money he spent on his business is insufficient to meet his burden of showing entitlement to a particular deduction.

■ *11.* Plaintiff claimed a $14,664.00 depreciation deduction on his 1995 federal income tax return for his vehicles and mowers used in connection with his Custom Lawn business as well as a $20,992.00 deduction from gross receipts as "cost of goods" and both of these deductions were allowed in full by Defendant, as were other properly documented deductions, because

they were properly documented. Defendant properly disallowed $24,001.00 of business expenses claimed by Plaintiff on his 1995 federal income tax return because these expenses were not documented.

■ 12. Penalties and additions to tax are presumed correct. *Pahl v. Commissioner of Internal Revenue*, 150 F.3d 1124, 1131 (9th Cir.1998).

■ 13. The failure to file penalty under 26 U.S.C. § 6651(a)(1) applies when an income tax return is not filed within the prescribed time and imposes a 5% addition to tax if the failure to file is not for more than one month. Plaintiff's federal income tax return was filed on November 4, 1996, which was twenty days after Plaintiff's extended deadline to file, October 15, 1996, expired. Therefore, the failure to file penalty imposed in this case in the amount of $1,204.00 is correct and must stand.

■ 14. The accuracy related penalty under 26 U.S.C. § 6662(a) applies when it has been determined that the underpayment of tax is attributable to negligence or disregard of rules or regulations, when there has been a substantial understatement of income tax or when there has been any substantial valuation misstatement and imposes a 20% addition to the amount of the tax underpayment. The accuracy related penalty imposed by Defendant in this case in the amount of $4,816.00 is correct and must stand since the underpayment of tax is attributable to Plaintiff's negligence or disregard of rules or regulations.

■ 15. If any amount of tax imposed by the Internal Revenue Code is not paid when it is due, 26 U.S.C. § 6601 requires that interest on the unpaid tax bill must be paid at a rate established by 26 U.S.C. § 6621.

16. As Plaintiff failed to pay his federal income tax obligation for the 1995 tax year when it was due, Defendant's determination that Plaintiff owes interest in the amount of $5,878.00 through April 20, 1998 is correct and must stand.

An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of February, 2002, upon consideration of the foregoing Findings of Fact and Conclusions of Law, it is ORDERED that: *(1)* JUDGMENT ON THE COMPLAINT IS ENTERED IN FAVOR OF DEFENDANT and it is determined that: *(a)* Plaintiff has a federal income tax deficiency for the 1995 tax year in the amount of $24,079.00; and *(b)* Defendant is entitled to impose both a failure to file penalty against Plaintiff under 26 U.S.C. § 6651(a)(1) in the amount of $1,204.00 and an accuracy related penalty under 26 U.S.C. § 6662(a) in the amount of $4,816.00; and *(c)* Defendant is entitled to interest through April 20, 1998 in the amount of $5,878.00; and *(2)* Plaintiff's objection to the proof of claim filed by Defendant is OVERRULED and Defendant's proof of claim is ALLOWED AS FILED.